Nos. 2-08-0875 & 2-09-0759 cons.      Filed: 9-10-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--2260 |
| TIMOTHY D. KANE, | ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Timothy D. Kane, entered an open guilty plea to escape (720 ILCS 5/31--6(c) (West 2004)). He was sentenced as a Class X offender (see 730 ILCS 5/5--5--3(c)(8) (West 2004)) to 20 years in prison. The trial court denied his motion to reconsider his sentence. On appeal, we remanded the cause for compliance with Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)) (People v. Kane, No. 2--07--1274 (2008) (unpublished order under Supreme Court Rule 23)). On remand, defendant's motion to reconsider his sentence was denied, and he appealed (appeal No. 2--08--0875).

Defendant then petitioned under section 2--1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2--1401 (West 2008)), alleging that, in sentencing him, the trial court had relied on grand jury testimony that was later proved false. On the State's motion, the trial court "dismissed" the petition. Defendant appealed (appeal No. 2--09--0759). We consolidated the appeals.

On appeal, defendant argues that he is entitled to a new sentencing hearing because the trial court relied on inaccurate grand jury testimony in sentencing him. We affirm the judgment in the direct appeal. We vacate the dismissal of the section 2--1401 petition, and we remand the cause.

Appeal No. 2--08--0875

On January 3, 2007, defendant entered an open guilty plea to escape. The factual basis was as follows. On August 20, 2004, defendant was arrested for burglary and retail theft and he was driven to jail for bond court. While defendant waited in a police car, an officer opened the car door for him. Defendant knocked the officer to the ground and fled. He was not found until May 28, 2005.

As later corrected, the presentencing investigation report, filed February 2, 2007, revealed that defendant had a lengthy criminal record. We note the most serious offenses. In 1992, defendant was sentenced to 24 months' probation for unlawfully possessing cannabis. In 1993, he pleaded guilty to two counts of residential burglary, admitted violating his probation for the cannabis offense, and received concurrent three-year prison sentences for the three offenses. In November 1994, he was placed on mandatory supervised release (MSR), which was discharged in August 1995. In February 1997, defendant was sentenced to four years in prison for theft and six years for residential burglary. In June 1999, he was placed on MSR for both offenses, but, in 2000, he was sentenced to 18 months in prison for unlawful possession of a controlled substance. In March 2001, defendant was sentenced to two years in prison for unlawful possession of a controlled substance. In October 2002, he was sentenced to two years in prison for theft. In March 2004, he was placed on MSR. In November 2005, in Wisconsin, he pleaded no contest to retail theft, criminal damage to property, and two counts of bail jumping.

In jail, defendant was placed into segregation in August 2006 for threatening another inmate and in December 2006 for fighting with another inmate. Defendant reported that he had used heroin daily since age 29 until 2005; that he had used cocaine from age 18 until 2005; and that, in 1989, he received inpatient drug therapy but did not follow it up with outpatient treatment.

On March 21, 2007, the trial court held a sentencing hearing. The parties stipulated that the police officers who had appeared before the grand jury in case Nos. 04--CF--3093 and 06--CF--62 would testify as they had in the prior proceedings. In the latter case, on February 1, 2006, Lake County sheriff's deputy Raymond Gilbert testified that, on January 7, 2006, he was dispatched to a trailer park to investigate suspected drug activity. Gilbert engaged in a high-speed chase of a truck that defendant was driving. Later, Gilbert entered a hotel room, where defendant was hiding under a bed. When Gilbert and Deputy Paavilainen tried to arrest defendant, he resisted. Before the grand jury, the prosecutor asked Gilbert, "[Defendant] picked you up and threw you on the ground?" Gilbert responded, "Yes." Further, Gilbert testified, defendant placed his hand on the holster of Paavilainen's gun and touched the gun's handle. Paavilainen sustained various injuries.

Defendant's sister testified that he was a good person who became a different person when he used drugs. Defendant submitted photographs showing his injuries from the fray with Gilbert and Paavilainen. In allocution, defendant apologized to the officer from whom he escaped, expressed remorse, and explained that, at the time, he had been undergoing heroin withdrawal.

In argument, the State stressed the facts of defendant's escape and delayed apprehension; Gilbert's grand jury testimony; and that defendant had committed 10 different felonies since 1992, was on bond when he escaped, had failed to take advantage of probation, and was recalcitrant during his latest stretch in jail. The State urged a 25-year sentence. Defendant argued that his substance abuse problem was a mitigating factor. He requested a sentence between 10 and 12 years.

The trial judge explained her decision as follows. Defendant had had 10 or 11 felony convictions since 1992 and was facing charges in Wisconsin. The grand jury testimony showed that, in case No. 04--CF--3093, defendant was arrested for theft at a mall and had to be pepper sprayed. In case No. 06--CF--62, he led police on a high-speed chase and tried to put his hand on the holster of an officer's gun. In the present case, he escaped while he was on bond. Most of defendant's problems had stemmed from his drug needs. He had expressed remorse and taken responsibility by pleading guilty. However, over the previous 14 years, he had squandered his opportunities to change, instead feeding his addictions. The court sentenced defendant to 20 years in prison and recommended placement where drug and alcohol treatment would be available.

Defendant moved to reconsider the sentence and also filed pro se motions for new counsel and to withdraw the guilty plea. At a hearing, defendant personally argued his motion for new counsel. He asserted that his trial counsel had been ineffective for stipulating to the grand jury testimony. He explained that, contrary to Gilbert's testimony, he never "threw the officer" or "picked the officer up and threw him across the room like [defendant] was super human [sic]." The judge stated that she had considered that defendant had led the police on a high-speed chase, struggled with them, and "put [his] hand on the holster of the police officer"; she had also considered the mitigating evidence. The trial court denied all of defendant's postjudgment motions.

On appeal, we held that defendant's attorney had not complied with Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)). We vacated the postjudgment proceedings and remanded for compliance with Rule 604(d). People v. Kane, No. 2--07--1274 (2008) (unpublished order under Supreme Court Rule 23). On August 15, 2008, defendant moved both to withdraw the guilty plea and to reconsider the sentence. On September 17, 2008, the trial court denied the motions, essentially for the same reasons as before. Defendant timely appealed.

Appeal No. 2--09--0759

On March 25, 2009, defendant filed a section 2--1401 petition alleging the following. Before the grand jury, Gilbert testified that, on January 8, 2006, defendant picked him up and threw him to the ground. At defendant's sentencing hearing, the prosecutor emphasized this testimony and the judge considered it. However, Gilbert's testimony was perjured, as shown by his deposition of September 26, 2008, in a federal case. Defendant's petition attached the transcript of his sentencing hearing and a partial transcript of the hearing on his motion to reconsider his sentence. It also attached a portion of Gilbert's deposition, including the following questions and answers about his grand jury testimony:

"Q. Okay. Do you recall that one of the questions was whether when you and Deputy Paavilainen attempted to arrest Mr. Kane, he struggled with you, and your answer was yes?

A. Yes.

Q. There is a question that was asked of you that says he picked you up and threw you on the ground. This is on page 4.

A. Yes.

Q. And you answered yes.

A. Yes.

Q. Did that, in fact, occur?

A. No. I believe I misinterpreted the question as when Timothy Kane carried us--when I say--we were holding on to [sic] him and he dragged or carried us out to the front is what I was saying yes to.

Q. Okay. So there was never a time when Timothy Kane was completely free and grabbed you, lifted you up and threw you?

-5-

A. No, no.

Q. You were asked [whether] during the struggle with Deputy Paavilainen the defendant placed his hand on the holster of Deputy Paavilainen's gun, and you answered yes?

A. Yes.

Q. Did you actually see that occur?

A. I did not.

Q. Okay. Is that based on your discussion with Deputy Paavilainen after the incident?

A. Yes.

Q. When did you have that conversation?

A. That was sometime right after. I don't exactly recall.

Q. And what did Deputy Paavilainen tell you?

A. He had said that *** he saw Timothy Kane's hand on his gun, which is why he drew his baton.

Q. And then the next question *** says, 'And he also touched the handle of Deputy Paavilainen's gun during the struggle,' and you answered, 'Yes. He did': is that correct?

A. Yes. Yes.

Q. And that also is based on information that Deputy Paavilainen provided you in a conversation after the incident?

A. Yes.

Q. Was anybody else present during the course of that conversation?

A. Not that I recall, no.

Q. Okay. But you didn't see those events occur?

A. No."

The case was assigned to the judge who had sentenced defendant. The State responded to the section 2--1401 petition with a "Motion to Dismiss or Otherwise Deny" the petition. The motion did not specify the section(s) of the Code under which it was brought. It did not explicitly contend that the petition failed to state a cause of action (see 735 ILCS 5/2--615 (West 2008)); that it was barred for any reason listed in section 2--619(a) of the Code (735 ILCS 5/2--619(a) (West 2008)); or that there was no genuine issue of material fact and that the State was therefore entitled to summary judgment (see 735 ILCS 5/2--1005(c) (West 2008)). Instead, the motion set out various assertions, many overlapping, which we summarize as follows: (1) the petition was untimely; (2) the petition did not allege a constitutional violation; (3) the alleged inconsistencies in Gilbert's testimony were too slight to invalidate the sentence; and (4) the alleged impropriety did not affect the length of defendant's sentence.

The court held a hearing on the State's motion. Defendant contended that the transcripts of the sentencing hearing and the hearing on his motion to reconsider showed that the judge had considered the Gilbert incident as a factor in sentencing. Defendant reiterated that the State's use of testimony that it knew or should have known was false denied him a fair sentencing hearing. He argued that Gilbert had perjured himself before the grand jury. The assistant State's Attorney said nothing of consequence, other than reiterating some of the allegations of the State's motion.

The trial court issued a written order granting the State's motion. The order explained that the judge had based defendant's sentence on all of the aggravating and mitigating factors. Also, it reasoned, defendant exaggerated both the importance of Gilbert's testimony and its inconsistency with his deposition: regardless of whether defendant had actually picked Gilbert up and thrown him, defendant had struggled with the officers, and the mere fact that Gilbert did not himself see defendant touch Paavilainen's gun did not prove that he had not done so. Thus, any inaccuracy had not affected

defendant's sentence. The order "dismissed" the petition but did not specify the legal ground for doing so. Defendant timely appealed.

ANALYSIS

On appeal, defendant contends that his sentence must be vacated, and the cause remanded for a new sentencing hearing, because the trial court violated due process by basing the sentence in part on Gilbert's inaccurate grand jury testimony. Defendant does not clearly distinguish between the two judgments on appeal, which, whatever their commonalities, have differing procedural backgrounds. In appeal No. 2--08--0875, we review the denial of defendant's motion to reconsider his sentence. In appeal No. 2--09--0759, we review the "dismissal" of defendant's section 2--1401 petition. Because the appeals arise from separate actions, we consider them separately.

In appeal No. 2--08--0875, defendant contends that the trial court abused its discretion in denying his motion to reconsider his sentence. A trial court's ruling on a motion to reconsider sentence will not be disturbed absent an abuse of discretion. People v. Reyes, 338 Ill. App. 3d 619, 621 (2003). We see no abuse of discretion here.

In moving to reconsider his sentence, defendant asserted that his altercation with Gilbert did not occur quite as Gilbert had described it. According to defendant, he did not actually throw Gilbert across the room. In denying defendant's motion to reconsider his sentence, the trial judge explained that she had considered the full circumstances of the encounter, including the high-speed chase, the physical struggle, and the fact that defendant had tried to take a gun away from Gilbert's partner. We note that the judge also considered--indeed, emphasized--the seriousness of the offense for which defendant was being sentenced, defendant's long criminal record, and his failure to take advantage of chances to rehabilitate himself. We cannot see how the court abused its discretion by discounting

defendant's unsworn assertion that his confrontation with Gilbert did not occur quite as Gilbert had described it. Therefore, we affirm the denial of defendant's motion to reconsider his sentence.

We turn to the trial court's dismissal of defendant's section 2--1401 petition. In the argument section of his brief, defendant does not distinguish between the denial of his motion to reconsider his sentence and the dismissal of his section 2--1401 petition. Indeed, he treats the section 2--1401 petition as, in essence, a second motion to reconsider his sentence. Defendant does not discuss the requirements for a section 2--1401 petition or whether he met those requirements. The State also treats the petition as, in essence, a second motion to reconsider his sentence.

This conflation of the two proceedings is improper. A motion to reconsider a sentence comes after a final judgment in an ongoing case (see People v. Caballero, 102 Ill. 2d 23, 51 (1984) (final judgment in a criminal case is the sentence)). A section 2--1401 petition, by contrast, is a new proceeding, not a continuation of the case that resulted in the judgment that it challenges. Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 102 (2002). The distinction between a postjudgment motion and a brand-new action is not arcane, and it might be crucial on appeal. Yet neither brief recognizes that basic distinction. A section 2--1401 proceeding is a civil remedy that extends to criminal as well as civil cases, and such proceedings are subject to the usual rules of civil practice. Like a complaint in a civil proceeding, " 'the petition may be challenged by a motion to dismiss for its failure to state a cause of action or if, on its face, it shows that the petitioner is not entitled to relief.' " People v. Vincent, 226 Ill. 2d 1, 8 (2007), quoting Klein v. La Salle National Bank, 155 Ill. 2d 201, 205 (1993). The motion filed and the arguments made by the State did not conform to the requirements of a proper motion to dismiss under the Code. To some extent, this neglect of procedure is understandable, if not excusable. At the trial level, the parties and the court were similarly indifferent to procedural specifics. The State's motion "to dismiss or deny" defendant's

petition did not state on what ground(s) the petition was insufficient; it cited no section(s) of the Code at all. Defendant did not file a response to the motion. At the hearing on the motion, he did not request clarification of the ground(s) on which the State moved to deny him relief. Finally, in the judgment, the trial court cited no statutory ground for "dismissing" the petition.

To dispose of this appeal, we conclude that the judgment "dismissed" the petition under section 2--615 of the Code (735 ILCS 5/2--615 (West 2008)) for failing to state a claim upon which relief can be granted. We see no other provision in the Code that fits what the trial court did.

A complaint should be dismissed under section 2--615 only if it appears that no set of facts could be proved that would entitle the plaintiff to recover. Seith v. Chicago Sun-Times, Inc., 371 Ill. App. 3d 124, 133 (2007). Our review is de novo. Vincent, 226 Ill. 2d at 14; Seith, 371 Ill. App. 3d at 133.

In deciding a section 2--615 motion, a court is confined to matters within "the four corners of the complaint" (Krueger v. Lewis, 342 Ill. App. 3d 467, 471 (2003)) and its attachments. Seith, 371 Ill. App. 3d at 133. Here, it does not appear that the trial court so limited itself. The judge who sentenced defendant also presided over the section 2--1401 proceeding. From the written judgment, it appears that the judge relied heavily on her own recollection of the sentencing hearing and the hearing on defendant's motion to reconsider his sentence. At this stage of the proceedings, that reliance was improper. On our de novo review, confining our inquiry to the petition and the attachments, we cannot say that no set of facts could ever be proved that would entitle defendant to relief. Although the allegations of perjury and prejudice might appear strained, we cannot say that they could never be proved. Defendant should be given the opportunity to proceed further on the petition. Therefore, we vacate the order dismissing the petition, and we remand the cause. Of course, we express no opinion on the ultimate merits of the petition.

Nos. 2--08--0875 & 2--09--0759 cons.

For the foregoing reasons, we affirm the judgment in appeal No. 2--08--0875, and we vacate the judgment in appeal No. 2--09--0759 and remand the cause.

No. 2--08--0875, Affirmed.

No. 2--09--0759, Vacated and remanded.

ZENOFF, P.J., and HUTCHINSON, J., concur.