# Illinois Official Reports

## Appellate Court

---

### *People v. Allen*, 2017 IL App (1st) 151540

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK ALLEN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1540 |
| Filed | December 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-19355; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Sentence reduced. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Sean Collins-Stapleton, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justice Pucinski concurred in the judgment and opinion.<br>Justice Mason dissented, with opinion. |

**OPINION**

¶ 1 Appellate courts generally defer to the sentencing judge's decision. But "generally" does not mean "always," and "defer" does not mean "acquiesce." Our sentencing laws must be interpreted in accord with common sense and reason so as to avoid an absurd or unduly harsh sentence. Otherwise we are reduced to little more than a rubber stamp, and that is neither our purpose nor our function.

¶ 2 Frank Allen, who has a record of minor, nonviolent offenses, broke a window of a truck parked in front of a courthouse and then grabbed a hat and two packs of cigarettes. The truck owner happened to see Allen in the act, and minutes later, Allen was arrested. Because Allen qualified for Class X sentencing, this minor property offense and theft resulted in 10½ years behind bars. That sentence does not reflect the offense's trivial nature. Accordingly, we impose the minimum sentence of six years.

¶ 3                                   Background

¶ 4 Leith Sweis parked his truck in front of a busy courthouse. When Sweis stepped outside for a cigarette, he saw Frank Allen peer into a window of his truck and proceed to use a rock to break the window. Allen took a hat containing two packs of cigarettes. As Sweis ran to his truck, Allen walked away and then sprinted when Sweis began chasing him. In his haste, Allen dropped Sweis's hat and the cigarettes. Sweis picked them up and hailed a police car. The police caught Allen. Another witness saw Allen break the truck's window, and one of the police officers saw Allen drop the hat as he ran. Allen, however, denied breaking into the truck. The trial court found Allen guilty of burglary.

¶ 5 The presentencing investigation report (PSI) showed that Allen, born in 1966, had amassed 11 convictions between 1983 and 2009, including 6 for burglary and 3 for theft. His first sentence in 1983 was probation; by 2000, he was sentenced to 15 years of imprisonment for burglary. At this time of this incident, Allen was still on mandatory supervised release for a 2009 burglary conviction. Allen had a girlfriend and a six-year-old son and was receiving medication and therapy for schizophrenia and bipolar disorder.

¶ 6 At the sentencing hearing, the State argued that Allen was "a consistent thief and burglar" and qualified as a Class X offender. Defense counsel argued for a sentence "closer to the minimum" since Allen had mental health issues and the modest stolen property was recovered by the owner. In rebuttal, the State asserted as an aggravating factor that Allen committed the offense outside a courthouse. Allen denied committing the offense, noted his relationship with his son, and asked for leniency.

¶ 7 The trial court stated that it considered the statutory aggravating and mitigating factors and nonstatutory mitigating factors, adding, "I don't draw any inference from the fact that he says he is not guilty." The trial court observed that Allen's long criminal history with long sentences demonstrates that he cannot be deterred from crime, expressly noting that Allen was on parole or mandatory supervised release for a 2009 burglary. The trial court found that Allen was beyond rehabilitation and characterized Allen's conduct as "brazen" for having been done outside a busy courthouse. The trial court sentenced Allen to 10½ years' imprisonment under the Class X enhancer (730 ILCS 5/5-4.5-95(b) (West 2012)). Allen's

motion to reconsider his sentence was denied.

¶ 8                                    Standard of Review

¶ 9        We review a sentence within statutory limits for abuse of discretion and may alter the sentence when it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 10                                        Analysis

¶ 11       Allen contends that his 10½-year prison sentence is excessive. Burglary is a Class 2 felony, punishable by a term of 3 to 7 years in prison. 720 ILCS 5/19-1(b) (West 2012); 730 ILCS 5/5-4.5-35(a) (West 2012). When a defendant more than 21 years old is convicted of a Class 1 or 2 felony, having two prior and separate felony convictions of Class 2 or greater, he or she must be sentenced as a Class X offender with a range of 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2012).

¶ 12       The trial court followed the law: it imposed a sentence within range and considered the appropriate sentencing factors. But, we conclude, the sentence still amounts to an abuse of discretion. Much like our previous decision in *People v. Busse*, 2016 IL App (1st) 142941 (which both parties discuss in their briefs), the trial court imposed a lengthy sentence that greatly exceeds the seriousness of the crime (or rather, the lack of seriousness). See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11 (sentence should reflect both seriousness of offense and objective of restoring defendant to useful citizenship); *People v. Willis*, 2013 IL App (1st) 110233, ¶ 123 (in fashioning appropriate sentence, most important factor is seriousness of crime); see also 720 ILCS 5/1-2(c) (West 2012) (partial purpose of sentencing statutes to prescribe penalties proportionate to seriousness of offenses). In so doing, we are not, as the dissent maintains, "carv[ing] out a 'petty offense' exception" to Class X sentencing, we are applying the statutory law as well as the case law that our supreme court has instructed us to follow.

¶ 13       Busse was caught stealing $44 worth of quarters from a university vending machine. *Busse*, 2016 IL App (1st) 142941, ¶¶ 1, 8. The trial court sentenced him to 12 years, well above the Class X minimum because Busse had a long history of committing similar vending-machine heists, and his previous stints in jail had not deterred him. *Id.* ¶¶ 15, 17. We reduced his sentence to 6 years, the minimum for a Class X sentence, as the 12-year sentence did not reflect the seriousness of the offense. *Id.* ¶ 38. Busse had not harmed or threatened any person during his quest for loose change, and he was not armed with a weapon; this was consistent with his past crimes. *Id.* ¶ 29. Further, if his past stays in prison had not rehabilitated him, there was no point in imposing yet another lengthy sentence, at incredible expense to the State, simply to punish him for his petty crime. *Id.* ¶¶ 32, 37.

¶ 14       There are striking similarities between Allen and Busse. Allen broke into the truck to steal small items with little value, which were almost immediately returned to Sweis. He did not harm or threaten anyone. Allen also has a long history of committing burglary and comparable crimes, as the dissent notes, but no history of violence. And Allen also has bounced in and out of prison for much of his adult life without his incarcerations changing his behavior after release.

¶ 15    Most important is the offense's trivial nature and that the 10½-year sentence does not reflect its low level of seriousness. Six years is enough to punish an offender for breaking a truck window and stealing two packs of cigarettes and a cap (which were promptly returned to the owner). The sentence was "manifestly disproportionate to the nature of the offense" and thus an abuse of discretion. *People v. Fern*, 189 Ill. 2d 48, 54 (1999). We are not substituting our judgment for that of the trial court, or reweighing the factors, when we say that a decade in prison is "greatly at variance with the spirit and purpose of the law" against burglary. *Id.* While the trial court has discretion in sentencing, the exercise of that discretion has limits and is not "totally unbridled." (Internal quotation marks omitted.) See *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42; *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26 ("the appellate court was never meant to be a rubber stamp for the sentencing decisions of trial courts"). We have not created a new legal rule or mandated that all Class X sentences should be reduced to the minimum; instead, we have applied the law to the circumstances and evidence presented. If a trial court abuses its discretion in imposing sentence, it is not an option for an appellate court to modify that sentence—it is our duty to modify it.

¶ 16    The trial court's discretion was constrained by the Class X sentencing scheme—at minimum, Allen was going to be sentenced to six years of imprisonment. Class X sentencing takes into consideration criminal history and reflects the legislature's judgment that repeat offenders deserve longer sentences. Application of Class X sentencing doubled Allen's minimum sentence from three to six years. The dissent correctly notes that the legislature chose to have the Class X scheme encompass any Class 1 or 2 felony, even minor ones. But even if the legislature chose not to exclude petty thefts, the trial court's exercise of its discretion to tailor the sentence within the Class X range must be tempered by the amount of harm the defendant inflicted, that is, the seriousness of the offense. That was not done here. In the face of a legislative judgment, we do not simply throw up our hands and say that we have no role to play in sentencing. The legislature has created sentencing ranges, and it is the trial court's job, and then our job, to impose a sentence that is appropriate, just, and proportionate, depending on the nature, seriousness, and character of the offense.

¶ 17    Allen's criminal history is nonviolent, nonserious, and, over its course, has posed no risk of harm to any individuals. Allen's stays in prison have not deterred him from committing low-level criminal acts or rehabilitated him, and according to the trial court, Allen cannot be rehabilitated (a conclusion supported by his background and the fact that he committed this crime while on mandatory supervised release). The dissent would use this as a reason to uphold the sentence, but we cannot see the point in sending Allen to prison (a place whose partial purpose is supposed to be rehabilitation) for a long time if it is unlikely that he will emerge from it better than he was when he entered it. See U.S. Dept. of Just., Bureau of Just. Stats., *Recidivism of Prisoners Released in 30 States in 2005: Patterns From 2005 to 2010*, at 1 (Apr. 2014), https://www.bjs.gov/content/pub/pdf/rprts05p0510.pdf. (within five years of release, 82.1% of property offenders were arrested for new crime).

¶ 18    The dissent questions our characterization of Allen's crime as "nonviolent" since he broke the truck window. But the act of breaking the truck window is irrelevant to our point that Allen did not harm Sweis or anyone else, nor threaten to do so. The use of force against a truck window is poles apart from the serious use of force against a person, and one cannot be likened to the other. The dissent makes the same point as to Allen's criminal history; the majority of his convictions, and all of his recent convictions, are for burglary and theft. But

neither of those crimes includes an element of force used against a person. See 720 ILCS 5/16-1(a) (West 2016) (defining theft as obtaining unauthorized control of property); 720 ILCS 5/19-1(a) (West 2016) (defining burglary as entering without authority a house or vehicle with intent to commit theft or felony). (Allen does have a 1984 conviction for robbery, which does have an element of force. See 720 ILCS 5/18-1(a) (West 2016) (defining robbery as taking property from a person by use of force or threat of force).) Indeed, the State noted at sentencing that this crime was similar to several of Allen's burglaries, supporting our point that Allen is consistent but in no way dangerous to others. This makes Allen far less culpable, far less dangerous, and far less deserving of a harsh sentence than one who uses physical force against a person. The 10½-year sentence is not necessary to protect the public.

¶ 19 The dissent emphasizes Allen's lack of remorse as an appropriate aggravating factor. But the trial court specifically stated that it drew no inference from Allen's protestations of innocence, so this was not a factor in its decision and should not be a factor in the dissent.

¶ 20 Allen's mental health issues—he had been diagnosed with schizophrenia and bipolar disorder—cut both ways in this analysis. Their apparent persistence means that Allen is less able to be rehabilitated, and there is no basis to believe another lengthy prison sentence will provide more good than harm regarding his mental health treatment or status. But the record is not sufficiently developed in this area; we do not know, for example, whether Allen was receiving adequate mental health treatment at the time he committed this offense. So, we do not rely on his mental health as a reason to reduce his sentence.

¶ 21 All in all, then, what is the point of a sentence over the minimum? The justification is that Allen deserves to be punished for his actions. But, frankly, these particular facts do not merit more than a decade of imprisonment.

¶ 22 There is one difference between Busse and Allen, and that is in the damage to the truck. Busse's vending-machine theft did not damage the machine, which belonged to a university. Allen broke Sweis's truck window, which is a pecuniary inconvenience to Sweis. But Sweis's window will not be fixed any faster, or less expensively, if Allen spends 10½ years in prison versus 6 years. What Sweis (and other victims of property crime) need from the criminal justice system is not an extra four years of punishment for offenders like Allen; Sweis needs restitution, which he is almost certain not to get the longer Allen spends in prison. The State could have achieved better results by focusing on helping Allen to make Sweis whole, rather than punishing Allen even more severely. Our sentencing scheme's relentless focus on incarceration blinds us to other possibilities that would do a better job helping victims and rehabilitating offenders. Further, shifting away from harsh sentences for minor, low-level crimes would increase public confidence. Unrestrained sentences like the one imposed on Allen reflect poorly on the legal system.

¶ 23 Under Illinois Supreme Court Rule 615, we reduce Allen's sentence to six years.

¶ 24 Sentence reduced.

¶ 25 JUSTICE MASON, dissenting:

¶ 26 The Illinois legislature has determined that certain recidivist offenders should be subject to Class X sentencing provisions that enhance the sentence that would otherwise apply to the felony of which they are convicted. 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2012) (a

defendant over the age of 21 who is convicted of a Class 1 or Class 2 felony and who has two prior, separate felony convictions of Class 2 or greater, must be sentenced as Class X offender with a sentencing range of 6 to 30 years). There is no dispute that Frank Allen is a recidivist offender subject to Class X sentencing and that the sentencing range to which he was subject as a result of his seven prior felony convictions (including six felony burglary convictions and a robbery conviction) was 6 to 30 years. Although the majority acknowledges that the trial court followed the law (see *supra* ¶ 12 ("The trial court followed the law: it imposed a sentence within range and considered the appropriate sentencing factors.")), and imposed a sentence at the lower end of the sentencing range, it nonetheless deems Allen's 10½-year sentence excessive and determines that the minimum 6-year term is the only sentence that would not constitute an abuse of discretion. Because my colleagues are merely substituting their judgment for that of the trial court and because a determination that anything other than the minimum sentence eviscerates the trial court's well-recognized discretion in sentencing decisions, I respectfully dissent.

¶ 27    Allen's criminal history spans a period of 30 years. Beginning at age 17 and continuing to his current conviction at age 48, he has amassed 13 convictions, primarily for property related crimes, although, as noted, he does have a robbery conviction as well as a conviction for "theft from person." Allen has spent a substantial portion of his adult life behind bars on prison sentences ranging from 6 months to 15 years.[1] At the time of his current offense on October 21, 2014, Allen was serving a period of mandatory supervised release on his sixth felony burglary conviction, having been released from prison 11 months earlier. The fact that a defendant commits another offense while serving a period of mandatory supervised release is properly recognized as an aggravating factor. *People v. Snyder*, 2011 IL 111382, ¶ 37. It is obvious that nothing in Allen's criminal history supports the conclusion that a sentence above the minimum must, under any reasonable definition of the term, be deemed "excessive."

¶ 28    Allen's social background, as reflected in the presentence investigation report, likewise does not provide a basis for overriding the trial court's exercise of discretion. According to the PSI, Allen reported that his parents were "kind-hearted, supportive and Christian." None of Allen's family members has criminal backgrounds nor do his four closest friends. Allen completed the ninth grade at Gerieg High School in Chicago, where he reportedly earned A's and B's, and left school, not because he was suspended or expelled, but because of a "family matter." Before his arrest on October 21, 2014, Allen was employed full-time as a painter for a car rental company earning $13 per hour and was living with his mother.

¶ 29    Allen's self-reported mental health history included a diagnosis of schizophrenia and bipolar disorder at age 26. He has been prescribed a number of medications, including Risperdal and trazodone, and while incarcerated awaiting trial, saw a psychiatrist twice a month. There is no indication that Allen was not taking his medications. Allen elected to testify at trial, and while his testimony was implausible, given the two eyewitnesses who saw him use a chunk of concrete to smash the victim's car window, it was not delusional. In

---

[1]Allen received a six-month sentence for theft in 1984; two 2-year sentences in 1990 and 1991 for theft from person and possession of burglary tools, respectively; two 3-year and six-month sentences in 1985 and 1988 for burglary; four 7-year sentences, all for burglary, in 1992, 1993, 1997, and 2009; and a 15-year sentence for burglary in 2000.

particular, Allen did not claim that he was suffering any particular mental health problems on the date of the crime, either during his testimony or in allocution at sentencing. There is thus no basis to treat Allen's self-reported mental health issues as a mitigating factor.

¶ 30    Allen continued to maintain his innocence after his conviction and expressed no remorse for his actions. He claimed both in his testimony and at sentencing that he was merely out jogging when the police arrested him for no reason. A defendant's lack of remorse has long been recognized as an appropriate aggravating factor to take into account at sentencing. See, *e.g.*, *People v. Bannister*, 232 Ill. 2d 52, 91 (2008) (" 'This court has consistently held that a convicted defendant's remorse or the absence of it is a proper subject for consideration at sentencing.' " (Internal quotation marks omitted.) (quoting *People v. Burgess*, 176 Ill. 2d 289, 317 (1997))).

¶ 31    I further question the characterization of Allen's conduct as "nonviolent," a term the majority uses to diminish the nature of Allen's criminal history. Merriam-Webster defines "violent" as "marked by the use of usually harmful or destructive physical force." See Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/violent (last visited Oct. 26, 2017). The circumstances of Allen's prior convictions are not contained in the record, so there is no reason to assume that they all involved nonviolent conduct. As relevant here, using a burglary tool to jimmy a car lock is not violent; using a chunk of concrete to smash a car window—a textbook example of "usually harmful or destructive physical force"—is. While the seriousness of Allen's offense would certainly have been enhanced had someone been in the car, the fact that no one was present does not render his conduct "nonviolent."

¶ 32    Our supreme court has consistently recognized the discretion vested in the trial court in matters of sentencing and cautioned against a court of review substituting its judgment for that of the trial court simply because it would have weighed the relevant aggravating and mitigating factors differently. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010) ("The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference."); *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Lampley*, 2011 IL App (1st) 090661-B, ¶ 39. The power to reduce a sentence should be exercised " 'cautiously and sparingly.' " (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Jones*, 168 Ill. 2d 367, 378 (1995)). In order to find that the minimum term of six years is the only sentence that is not excessive, the majority necessarily concludes that the multiple aggravating factors discussed above are outweighed by what it deems is the "petty" nature of Allen's offense. But that is what trial judges, not reviewing courts, do.

¶ 33    This is the second time in recent memory that this court has carved out a "petty offense" exception to legislatively-mandated Class X sentencing in order to reverse a sentence over the six-year minimum. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 31 ("We feel confident that the legislature created Class X sentencing to protect the public from murderers and rapists, not penny-ante pilferage."). But the reasoning in *Busse* and here simply ignores that the legislature included all types of Class 1 and Class 2 felony convictions for purposes of a defendant's eligibility for mandatory Class X sentencing. Had the legislature meant to exempt nonviolent felonies, "petty" felonies, or any other type of felony from mandated Class X sentencing, it would have said so. See *People v. Giraud*, 2012 IL 113116, ¶ 6 ("We do not depart from the plain language of the statute by reading into it exceptions, limitations,

- 7 -

or conditions that conflict with the expressed intent." (Internal quotations marks omitted.)); *People v. Martinez*, 184 Ill. 2d 547, 550 (1998) ("A court should not depart from the language of the statute by reading into it exceptions, limitations or conditions that conflict with the intent of the legislature." (Internal quotations marks omitted.)). The majority's willingness to override discretionary sentencing decisions based on its supposition that the legislature did not really mean what it plainly said does not reflect the cautious and sparing use of the power of a reviewing court to reduce a sentence.

¶ 34    The trial court concluded that given Allen's criminal history and the repetitive nature of his offenses, he was beyond rehabilitation. The majority apparently agrees (*supra* ¶ 17), but curiously uses this conclusion to justify its imposition of a minimum sentence (see *supra* ¶ 21 ("All in all, then, what is the point of a sentence over the minimum?")). But defendants deemed incapable of rehabilitation generally receive longer, not shorter sentences. See, *e.g.*, *People v. Kane*, 404 Ill. App. 3d 132, 139 (2010) (defendant's "failure to take advantage of chances to rehabilitate himself" was properly considered as a factor in aggravation); *People v. Merritte*, 242 Ill. App. 3d 485, 495 (1993) (trial court did not err in imposing greater sentence upon defendants than was imposed upon their codefendant, given evidence of defendants' "lack of potential for rehabilitation"); *People v. Nelson*, 206 Ill. App. 3d 956, 963 (1991) (trial court did not abuse its discretion in sentencing defendant to natural life in prison for murder, even though it was his first offense, since court determined that defendant had not shown any rehabilitative potential); *People v. Coleman*, 201 Ill. App. 3d 803, 809 (1990) (defendant's sentence was not excessive where "defendant's criminal history showed a lack of rehabilitative potential").

¶ 35    I have expressed my agreement with the majority's concern about the range of offenses subject to Class X sentencing. *Busse*, 2016 IL App (1st) 142941, ¶ 45 (Mason, J., dissenting) ("I would wholeheartedly support removing nonviolent 'petty thievery' from the list of convictions that can render a defendant Class X eligible"). But we do a disservice to trial judges to find that they have abused their discretion when they apply a statute as written, which is exactly what the trial court did here. Indeed, at the sentencing hearing, even defense counsel did not contend that anything over the minimum sentence would be excessive. In response to the State's request for a lengthy prison term, counsel argued that the court should impose a sentence "closer to the minimum," thus conceding that there were aggravating factors the court was entitled to consider. And "closer to the minimum" precisely describes the sentence Allen received.

¶ 36    In *Busse*, the majority emphasized the cost of incarceration as a factor weighing heavily in favor of minimum sentences in "petty theft" Class X cases. *Id.* ¶ 37 ("[D]oes [defendant's] crime—pinching 176 quarters out of vending machines—require the taxpayers to pay close to 1,000,000 quarters to imprison him for 12 years?"). But using *Busse*'s formula (calculating an annual average cost per inmate of $20,627 per year at a minimum-security facility multiplied by the length of the sentence) here means that if Allen spends 10½ years in jail, the cost will be $216,583.50, while his minimum sentence (which the majority concedes is proportionate to the crime) will result in the expenditure of only $123,762. If that is, in fact, the measure of an excessive sentence (a proposition with which I disagree), both figures are obviously disproportionate compared to the value of the items stolen—a baseball cap and two packs of cigarettes.

¶ 37          This last point drives home that the majority's real problem is the application of Class X sentencing provisions to what it considers to be petty criminals (who nonetheless commit felonies). *Id.* ¶ 36 ("[T]he [Class X sentencing] statute operates as reflexive—an unthinking, mechanical application of laws that were never intended for a defendant such as Busse."). But that is a decision the legislature has made, and one that we are not at liberty to ignore. I would affirm Allen's sentence.