2020 IL App (1st) 180739-U

No. 1-18-0739

Order filed January 16, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 7090 |
| | ) | |
| OVIRTUS MOORE-DUNNON, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's six-year sentence for attempted armed robbery is affirmed where the record establishes that the trial court properly considered defendant's mitigating evidence.

¶ 2    Following a bench trial, defendant Ovirtus Moore-Dunnon was convicted of attempted armed robbery (720 ILCS 5/18-2(a)(1) (West 2016); (720 ILCS 5/8-4(a) (West 2016)) and sentenced to six years' imprisonment. On appeal, defendant argues the trial court failed to consider

certain mitigating factors in sentencing him, including his abusive childhood, lack of a serious criminal history, and remorse for his actions. We affirm.

¶ 3    The State charged defendant with one count each of armed robbery with a dangerous weapon, a knife, aggravated unlawful restraint, aggravated battery, and retail theft, stemming from an incident at a Marshalls department store in Chicago on April 28, 2017.

¶ 4    At trial, Ricardo Carpenter testified he worked as a loss prevention officer for Marshalls department store. At approximately 3:00 p.m. on April 28, 2017, Carpenter received a call regarding a man who was concealing merchandise in the store. Carpenter reviewed surveillance footage from multiple locations throughout the store and witnessed defendant place several items, including a Bluetooth speaker, into a Marshalls shopping bag and walk past the cashiers and toward the exit without paying for the items. The surveillance footage depicting the incident was published and admitted into evidence.[1]

¶ 5    As defendant moved toward the exit, Carpenter left his office and exited the store right before defendant did. Carpenter moved in front of defendant and asked him to give back the "unpaid for merchandise" in defendant's bag. Carpenter took the bag from defendant, who was then holding a kitchen knife, and returned to the store. Defendant then chased Carpenter "[t]hroughout the front of the store," with the knife, eventually taking pepper spray from his pocket and spraying it into Carpenter's face and nose, making him cough and his eyes burn.

---

[1] The State played the video in open court during Carpenter's testimony with Carpenter describing the incident as depicted in the video. While the video was included with the record on appeal, we were unable to play it. The video is unnecessary for our disposition as to defendant's excessive sentencing claim on appeal.

¶ 6    Carpenter then chased defendant out the store, while carrying "a piece from a four-way fixture that holds clothing" in order to protect himself from defendant's swinging the knife at him. Defendant returned to the entrance once more, at which point the manager locked the doors, which defendant then kicked. One of the associates called the police. A few days after the incident, Carpenter identified defendant from a photo array.

¶ 7    The parties stipulated that if Detective Perek were called to testify, he would testify that he did a search of offenders using a description from the surveillance video and obtained defendant's name and photograph and placed it into a photo array. The parties also stipulated that if called to testify, Detective Binetti would testify that on May 1, 2017, she showed the photo array to Carpenter, who identified defendant.

¶ 8    Detective Patrick Darling testified he investigated the incident and met with Carpenter who provided him with video footage of the incident, photographs of the merchandise defendant attempted to take from the store, as well as the bag taken from defendant. Also inside the bag were "a pair of blue jeans, a hair brush, and a plastic empty pepper spray container."

¶ 9    After defendant was arrested, he gave a video recorded statement in which he told Darling he was "trying to take some stuff" because he did not have much money at the time. He "pepper sprayed" Carpenter as both a way to chase him off and because he was "pissed off" because some of his personal belongings were in the bag Carpenter confiscated. Defendant used a knife to "get [Carpenter] off" of him as a "tactic" to get his personal belongings back and as a "scare tactic" to get away. Defendant had previously stolen from the store, but "this [time] was kind of extreme" because defendant "took it to a whole new level" when he knew he was under surveillance at the time he took the items, but did not care about the cameras.

¶ 10    The parties stipulated that if called to testify Officer Savage would testify he is an evidence technician for the Chicago Police Department, and examined the pepper spray package using laser analysis for latent prints, which showed a positive finding for partial ridge impressions. The parties further stipulated that if called to testify Officer Allen Metke would testify that he examined the partial ridge impression found by Officer Savage and identified defendant's fingerprints. Lastly, the parties stipulated that defendant had previously been convicted of residential burglary.

¶ 11    The court found defendant guilty of the lesser included offense of attempted armed robbery, aggravated battery to a merchant, and retail theft. In ruling, the court stated it reviewed the store surveillance video and defendant's recorded statement, noting that defendant kicked the locked doors of the store during the incident. Further, while defendant told the police officers he was "very angry" and "pissed off" because his personal effects were in the bag as well, he never indicated to Carpenter that he wanted to retrieve them.

¶ 12    The court denied defendant's motion for a new trial, and the case proceeded to sentencing. Defendant's presentence investigation report (PSI) showed he had prior juvenile adjudications for disorderly conduct (one year's court supervision) and robbery (five years' probation), and adult convictions for assault (three months' court supervision) and residential burglary (24 months' probation). In the PSI, defendant stated he grew up in a total of 14 foster homes and 3 group homes and described his childhood as "miserable." He stated he suffered physical and emotional abuse during foster care, was diagnosed with depression and bipolar disorder from an early age, and was placed on psychotropic medications.

¶ 13    In aggravation, the State argued defendant's background indicated a prior conviction for residential burglary, requiring the sentencing range for the current offense to be from 4 to 30 years'

imprisonment. The State further argued the offense was "calculating" in nature because defendant brought a can of pepper spray and a knife to the store "as a plan" to take the merchandise. The State also emphasized the violent nature of the offense, namely that defendant "swung the knife at the store employee" and pepper sprayed him "in full view * * * of a small child who was present as the defendant is attempting to hang on a locked door and get back at the store and attack the individuals in the store again." The State requested a sentence in excess of 10 years' imprisonment.

¶ 14    In mitigation, defense counsel argued defendant had been taking part in the Cook County Department of Corrections program for antiviolence, in an attempt "to better himself." Defense counsel also highlighted parts of defendant's PSI, including the fact that his childhood was "miserable," he once lived in an emotionally abusive foster home, and he had been diagnosed with depression and bipolar disorder and had been "in facilities on three occasions."

¶ 15    In allocution, defendant told the court he had been "practic[ing] patience and impulse control" and working on his anger management while incarcerated. Defendant also stated he believed "counseling or therapy would do more help than prison," because counseling had been very helpful for him in managing his depression. Defendant told the court he would "never take [his] freedom for granted again" and was ready to be "a productive, law-abiding citizen."

¶ 16    The court merged the counts and sentenced defendant to six years' imprisonment on the attempted armed robbery charge. In sentencing defendant, the court noted it observed him over the length of the case and found him "extremely articulate [and] more knowledgeable than most individuals that appear" before the court. The court found defendant "very intelligent" and presented himself "very well," but was surprised by the "level of anger" shown in the video. The court stated it understood defendant's childhood was "not great" but saw defendant repeatedly

failing to learn from his mistakes. Further, what was disturbing to the court was the "rage" it saw toward the coworker and in front of a child, especially in light of defendant's background. The court noted that defendant had "anger management issues" he needed to address and "with the right help" defendant would be productive.

¶ 17 The court denied defendant's motion to reconsider sentence, stating the court "did assess and factor in the defendant's lack of a prior record," but also factored in the situation where a merchant was "accosted with a knife in front of a child" and defendant continued to return to the store and place others in harm's way. Further, "the [c]ourt took into consideration those factors that were presented in the [PSI], as well as the aggravation and mitigation presented to the [c]ourt by the counsels and elocution [*sic*] presented by [defendant]."

¶ 18 On appeal, defendant argues his sentence is excessive because the trial court failed to properly consider the mitigating factors of defendant's abusive childhood, "relatively minor criminal history," and "sincere remorse for his behavior."

¶ 19 A trial court's sentencing decision is reviewed under the abuse of discretion standard of review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A reviewing court will find an abuse of discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id*. The trial court has broad discretion in imposing a sentence, and its sentencing decisions are afforded great deference, because the trial judge "observed the defendant and the proceedings," and is in a better position to weigh factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id*. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *People*

*v. Stacey*, 193 Ill. 2d 203, 209 (2000)). However, we must interpret sentencing laws "in accord with common sense and reason" and not merely rubber stamp the trial court's judgment, so as to "avoid an absurd or unduly harsh sentence." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 1.

¶ 20     A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In this case, defendant was convicted of attempted armed robbery. The sentence for attempted armed robbery ranges from 4 to 15 years. 730 ILCS 5/5-4.5-30(a) (West 2016); 720 ILCS 5/18-2(a)(1), (b) (West 2016); 720 ILCS 5/8-4(c)(2) (West 2016). Additionally, the parties agree defendant was eligible for an extended term, increasing the sentencing range to 4 to 30 years' imprisonment.

¶ 21     Nevertheless, defendant argues the trial court abused its sentencing discretion by failing to adequately weigh certain mitigating factors, specifically defendant's abusive upbringing, minor criminal history, and earnest remorse. Defendant requests that we reduce his sentence to the statutory minimum or remand for a new sentencing hearing.

¶ 22     A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11*; People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. While a trial court must consider all factors in aggravation and mitigation, the seriousness of the offense, rather than mitigating evidence, is the most important factor in sentencing. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor (*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Where, as here, a defendant argues that the court failed to properly consider certain factors, the defendant "must make an affirmative showing that

the sentencing court did not consider relevant factors.*" People v. Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 23 Defendant cannot make such a showing. Defendant's sentence is within the statutory guidelines, and therefore the sentence is presumed proper. See *Knox*, 2014 IL App (1st) 120349, ¶ 46. Further, defendant cannot overcome this presumption, because the record establishes that the trial court heard and considered defense counsel's argument regarding defendant's "miserable" and abusive childhood, as well as defendant's allocution where he informed the court he was receiving counseling and wanted to become a "productive, law-abiding citizen." In sentencing him, the court acknowledged the circumstances of defendant's background, and noted that while he was "very intelligent," he repeatedly failed to learn from his mistakes. Further, the court emphasized the "rage" and violent behavior defendant exhibited during the incident, and indicated defendant had "anger management" issues which needed to be addressed. In its ruling regarding the motion to reconsider sentence, the court stated defendant "accosted" Carpenter with a knife in front of a child and repeatedly placed other people in danger by his actions. See *Kelly*, 2015 IL App (1st) 132782, ¶ 94 (" 'The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record.' ") (quoting *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002)).

¶ 24 Although the trial court cannot give mitigating evidence no weight by excluding it from consideration, the court " 'may determine the weight to be given' " to that mitigating evidence. *People v. Chapman*, 194 Ill. 2d 186, 252-53 (2000) (quoting *People v. Davis*, 185 Ill. 2d 317, 344 (1998)). Here, the court sentenced defendant to a six-year prison term, only two years above the minimum sentence available to defendant, where the State requested a sentence exceeding 10

years' imprisonment. In sentencing defendant, the court commented that he would benefit from "the right help" in order to address his anger management issues. This reflects an understanding of the circumstances of defendant's upbringing as well as the other mitigating factors presented by defendant during sentencing. Accordingly, defendant has failed to meet his burden in affirmatively showing that the sentencing court did not consider the relevant factors during sentencing. See *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 25    Lastly, defendant also argues that the trial court failed to consider the financial costs of incarcerating defendant for six years in the Illinois Department of Corrections. See 730 ILCS 5/5-4-1(a)(3) (West 2016). Despite defendant's contention, the record contains no evidence that the trial court failed to consider the financial impact of defendant's incarceration. Accordingly, in the absence of evidence to the contrary, we will presume the trial court considered this factor as well before sentencing defendant. See *People v. Acevedo*, 275 Ill. App. 3d 420, 426 (1995).

¶ 26    We find the trial court did not abuse its discretion in imposing a six-year prison sentence for attempted armed robbery where it properly considered the mitigating evidence. For the foregoing reasons, we affirm the judgment of the trial court.

¶ 27    Affirmed.