**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230679-U

Order filed October 28, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0679 Circuit No. 21-CF-868 |
| RaJOHN L. STEWART, | ) ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Defendant's sentence was not excessive.

¶ 2    Defendant, RaJohn L. Stewart, appeals his sentence of 16 years' imprisonment for aggravated possession of a stolen motor vehicle. He argues that the Du Page County circuit court failed to consider the lack of seriousness of the offense as the most important factor. Further, defendant contends that the court failed to appropriately consider the best interests of his children and the hardship placed on his ailing grandmother when imposing his sentence. We affirm.

¶ 3 I. BACKGROUND

¶ 4    On June 3, 2021, defendant was indicted on 14 offenses, including aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(3) (West 2020)). On March 16, 2023, defendant entered an open plea of guilty to aggravated possession of a stolen motor vehicle and the remaining charges were dismissed. Defendant was admonished that, due to his eligibility for extended-term sentencing, his possible sentencing range was 4 to 30 years' imprisonment. The State provided the factual basis, explaining that on May 17, 2021, at approximately 2:21 a.m., an alarm was activated at a local car dealership. Upon arriving at the dealership, officers located four individuals. Officers observed two individuals "trying to move a *** 2018 Ferrari convertible *** with a total value of $250,000" and the other two individuals fleeing. Defendant was one of the individuals that fled. After his arrest, defendant admitted to being at the dealerships with the three other individuals. Defense counsel stipulated to the facts but informed the court that defendant was not one of the individuals who entered the dealership and moved the Ferrari.

¶ 5    At the sentencing hearing, Officer Carter Seward of the Hinsdale Police Department testified that he investigated the burglaries. Officers were dispatched to the Land Rover dealership shortly after 2 a.m. in response to an alarm. While at the Land Rover dealership, officers received a report of another alarm activation at the Ferrari dealership that was located one block away.

¶ 6    When officers responded to the Ferrari dealership, they observed a Chrysler in the lot with its engine running. Officers drove toward the Chrysler, pinning it against a wall of the Ferrari dealership. Defendant and another suspect fled from the vehicle. Defendant fled from the driver's seat. Both were subsequently arrested. The other suspect was found in possession of a firearm. Seward learned that the Chrysler had been stolen from Chicago earlier that month. The remaining two suspects evaded arrest.

¶ 7    Video surveillance from the Ferrari dealership showed two individuals attempting to enter multiple different Ferraris before entering a Ferrari located in the back parking lot service bay and driving away. The Ferrari was unable to exit the gated area where it was located and was ultimately abandoned. A window had been broken at each dealership. Evidence extracted from defendant's cell phone showed a photograph of defendant, sitting next to a small child, holding a firearm and internet searches for vehicle key reprogramming, universal key fobs, and "how to obtain information on how to start and activate vehicles that are in dealerships on lots." Further, the State admitted evidence that, in another case, officers had discovered firearms that defendant had placed in his children's bedrooms. Defendant had one juvenile adjudication for unlawful use of a weapon, one felony conviction for armed robbery, and one misdemeanor conviction in Indiana for carrying a handgun without a license. Defendant had been sentenced to 10 years' imprisonment for the armed robbery offense. He was paroled in 2018 and returned to the Illinois Department of Corrections (IDOC) in June 2020 before being discharged on July 24, 2020.

¶ 8    In mitigation, defendant's wife, Ariel Grant, testified that she and defendant had four children together. Grant was employed full time prior to his incarceration. While Grant was at work, defendant cared for the children, one of whom suffered from epileptic seizures. Defendant provided transportation to and from school, helped the children with homework, and provided parental guidance. During defendant's incarceration, Grant was unable to work full time, which caused the family financial hardship. Additionally, Grant had been undergoing treatment and testing for a cardiac condition, which defendant helped support her through.

¶ 9    Shiela Green, defendant's grandmother, testified that she suffered a stroke in 2018 that left her partially paralyzed. Prior to his incarceration, defendant visited Green daily to make sure she ate, bathe her, and help her clean. He generally "made sure everything was okay." Green stated

3

that defendant was a very caring individual, had matured, and desired to change and "liv[e] a clean life" when he was released from prison.

¶ 10     Defendant provided character letters and certificates of programs that he had completed while incarcerated. He had undergone several traumatic losses and difficulties in his adolescence, including the death of both parents and two siblings, one to gun violence. Defendant struggled with alcohol and drug abuse, which was exacerbated by these losses. He made a statement in allocution taking responsibility for his actions, expressing a desire to change, and asking for forgiveness from those he had wronged.

¶ 11     When sentencing defendant, the court discussed the factors in mitigation, highlighting that defendant accepted responsibility for his actions, had a difficult childhood and substance abuse, and provided support and care for his wife, children, and grandmother, and had attempted to obtain a general education diploma. The court also noted the emotional and financial hardship that would be caused by his imprisonment. In addition to other aggravating factors, the court discussed defendant's criminal history, including the fact that he had been paroled and returned to the IDOC and the offense occurred less than one year after his discharge. Further, it found defendant's flight from the scene and the passenger's possession of a firearm to be aggravating, though the court had no evidence as to whether defendant had knowledge of the firearm. The court found that defendant's internet searches demonstrated defendant's involvement, stating: "This was a criminal scheme, and the defendant knew how to steal vehicles from dealerships based on everything that was presented before the Court."

¶ 12     The court sentenced defendant to 18 years' imprisonment. It found that a significant period of imprisonment was necessary to deter others from engaging in the same type of behavior. Defendant filed motions to vacate his guilty plea and reconsider his sentence. The motion to vacate

4

was denied but the court granted defendant's motion to reconsider and reduced his sentence to 16 years' imprisonment. Defendant appealed.

¶ 13                                                  II. ANALYSIS

¶ 14        On appeal, defendant argues that his sentence was excessive where the court failed to properly consider the seriousness of the offense in which defendant merely sat in a vehicle at the scene of the crime. Further, defendant argues that the court inappropriately weighed mitigating factors which caused unnecessary harm to his children and grandmother.

¶ 15        The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Absent an abuse of discretion, a court's sentencing decision will not be reversed. *People v. Bush*, 2022 IL App (3d) 190283, ¶ 118. "A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation." *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). A reviewing court will give great deference to the circuit court's sentencing judgment and will not substitute its judgment for that of the circuit court because the relevant factors could have been weighed differently. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "[A] sentence within the statutory limits will not be considered excessive unless it greatly varies with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008).

¶ 16        Here, defendant and three individuals broke into two car dealerships and attempted to enter numerous vehicles before entering a Ferrari and failing to drive it from the parking lot. The evidence presented established that, after researching methods to steal vehicles from car dealerships, defendant travelled with three individuals to both dealerships. While his codefendants

5

attempted to drive a $250,000 Ferrari out of the lot, defendant waited in a running vehicle, which was itself stolen. Defendant fled from the driver's seat of that vehicle when the police arrived. We conclude that the court properly considered the facts underlying the offense and appropriately weighed defendant's involvement.

¶ 17     Further, defendant argues that the court erred in failing to impose a sentence that allowed defendant to remain in his children's lives, in accordance with Children's Best Interest Act. Pub. Act 101-0471 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-5-3.1). Specifically, defendant contends that to remove defendant, the primary caregiver to four young children, including one with special needs, would cause disruption and dire hardship on his family, and was against the best interests of his children. However, there was no sentence that the court could fashion which would prevent this removal as defendant was ineligible to receive a term of probation. See 730 ILCS 5/5-5-3(F) (West 2020). When determining defendant's sentence, the court explicitly mentioned its consideration of the care he provided to his children, wife, and grandmother. Further, it considered the hardship that incarceration would impose upon defendant's family. "The existence of mitigating factors does not obligate the trial court to impose the minimum sentence." *People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006). The record reflects that the court considered the appropriate factors in aggravation and mitigation. We decline defendant's invitation to reweigh the mitigating evidence and substitute our judgment for that of the sentencing court. See *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995).

¶ 18     Defendant's 16-year sentence was within the applicable extended-term range (730 ILCS 5/5-4.5-30(a) (West 2020)) and was not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." See *People v. Stacey*, 193 Ill. 2d 203,

6

210 (2000). Accordingly, we conclude that the court did not abuse its discretion in imposing this sentence on defendant.

¶ 19    In coming to this conclusion, we reject defendant's reliance on *People v. Busse*, 2016 IL App (1st) 142941, ¶¶ 27-29, and *People v. Allen*, 2017 IL App (1st) 151540, ¶¶ 11-15. In *Busse*, the defendant walked on to a university campus during the day and stole $44 in loose change from a vending machine. *Busse*, 2016 IL App (1st) 142941, ¶ 29. The defendant did not break into any buildings, damage any property, harm anyone, or threaten harm while committing the theft. *Id.* The court found the defendant's 12-year sentence of imprisonment to be excessive considering the lack of seriousness of the offense. *Id.* Similarly, in *Allen*, the defendant's 10½-year sentence was found excessive where he broke the window of a parked truck and stole a hat and two packs of cigarettes. *Allen*, 2017 IL App (1st) 151540, ¶ 15. In the instant case, as the court pointed out, defendant and three individuals were acting in concert to deprive the dealership of a vehicle worth $250,000. These actions are significantly more serious than the $44 in change or two packs of cigarettes that defendant attempts to compare it to. Additionally, the legislature determined that aggravated possession of a stolen motor vehicle, having a value of $25,000 or greater, was a serious offense when it categorized it as a Class 1 felony. See 625 ILCS 5/4-103.2(a)(3), (c) (West 2020).

¶ 20                              III. CONCLUSION

¶ 21    The judgment of the circuit court of Du Page County is affirmed.

¶ 22    Affirmed.