2019 IL App (2d) 161016
No. 2-16-1016
Opinion filed March 11, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-CC-12 |
| | ) | |
| CHAZ WASHINGTON ALI, | ) | Honorable |
| | ) | Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1  After refusing to testify at a murder trial, defendant, Chaz Washington Ali, was charged with direct criminal contempt.  Following a jury trial, defendant was found to be in contempt and was sentenced to a six-year prison term.  Defendant argues that, in his contempt trial, the State improperly commented on his invocation of his fifth amendment privilege against self-incrimination in the murder trial.  We affirm.

¶ 2                                    I. BACKGROUND

¶ 3  Defendant was subpoenaed by the State to testify in the murder trial of Jim McPherson. At the time, defendant was facing criminal charges in Missouri and was in custody there.

Attorney Eric Rinehart was appointed to represent defendant in connection with his involvement in McPherson's murder trial. On November 4, 2014, Rinehart informed the parties that defendant would exercise his fifth amendment privilege against self-incrimination. The State granted defendant use immunity, and the trial court ordered him to testify. Defendant still refused. McPherson's trial concluded on November 12, 2014, without defendant's testimony. Defendant was subsequently charged with criminal contempt. At trial, defendant raised the defense of necessity, contending that he feared retaliation from members of a street gang if he testified against McPherson.

¶ 4    Ari Fisz, who was one of the prosecutors at McPherson's murder trial, testified at defendant's contempt trial. Fisz acknowledged that, at some point during the McPherson trial, McPherson's counsel tendered to the State copies of certain Facebook posts from 2013. At least one of the posts referred to defendant as a snitch. Fisz also acknowledged that on November 11, 2014, he received a text message from Rinehart. According to Fisz, Rinehart "wrote something along the lines of mom and he fear retaliation." The text message referred to the threatening Facebook posts.

¶ 5    Defendant testified that he received threats on Facebook from March through July 2013. Defendant took the threats seriously. He was brought from Missouri to Illinois for the McPherson trial and was kept in custody in the Lake County jail. While there, a fellow inmate indicated that defendant should not testify against McPherson. When defendant and Rinehart first met, defendant told Rinehart that he was concerned about his mother's safety and his own if he testified against McPherson.

¶ 6    Defendant's mother testified that, at some point during the McPherson trial, defendant told her that they would both be in harm's way if he testified. Although she did not go into hiding, she feared retaliation.

¶ 7    Rinehart testified that he communicated with Fisz and another prosecutor, Jason Grindel, about the threats defendant had received. Rinehart recalled sending a text message on November 11, 2014. He testified that, prior to the text message, he had spoken with the prosecutors about defendant's fears. Rinehart acknowledged that he never told the court in the McPherson trial, and never contacted the Lake County Sheriff's Department, about defendant's fears.

¶ 8    The State called Fisz as a rebuttal witness. He testified that Rinehart asked whether he could arrange for defendant to receive a lighter sentence in Missouri in exchange for his testimony against McPherson.

¶ 9    Prior to closing argument, defendant asked the trial court to bar the State from arguing that defendant's reason for refusing to testify at the McPherson trial shifted from fear of self-incrimination to fear of retaliation. The trial court denied defendant's request. During closing argument, the prosecutor contended that it was out of loyalty to McPherson, not fear of retaliation, that defendant refused to testify at McPherson's trial. During her rebuttal argument, the prosecutor stated as follows:

> "[Defendant] used the court system to try to get out of testifying. He asserts his Fifth Amendment right. But that doesn't work. That's his excuse for not testifying back in November. And today his new excuse is the necessity defense."

Defendant did not object to this comment when it was made and did not include the issue in his posttrial motion.

¶ 10                                II. ANALYSIS

¶ 11    Defendant contends that the State's reference, during its rebuttal argument, to his refusal to testify in the McPherson trial was improper because "the argument belittled the defendant's Fifth Amendment privilege" and "misstated the evidence by falsely implying that it was impossible for the defendant to be afraid of self-incrimination and retaliation at the same time." Defendant concedes that, because he did not raise these issues in his posttrial motion, they are forfeited. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant contends, however, that the issues are reviewable under the plain-error rule. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 12    In resolving this appeal, we adhere to the following principles governing plain-error review and the permissible scope of closing argument by the State:

> "Plain error is a 'narrow and limited exception' to the general rule of forfeiture.
> [Citation.]  Plain error bypasses ordinary forfeiture principles, allowing a reviewing court
> to proceed on the merits of an unpreserved clear or obvious error when (1) the evidence is
> closely balanced and the error threatened to tip the scales of justice against the defendant
> or (2) the error is so egregious that it challenges the fairness of the trial and the integrity
> of the judicial process.  [Citation.]  We begin a plain-error analysis by determining if
> there was reversible error in the first instance, as '[a]bsent reversible error, there can be
> no plain error.'  [Citation.]
>
> Prosecutors are granted wide latitude in delivering closing arguments.  [Citation.]
> They may comment 'on the evidence and on any fair and reasonable inference' that may
> be derived from that evidence.  [Citation.]  When reviewing for error, we look at the
> argument as a whole, rather than focusing only on select phrases or remarks.  [Citation.]
> 'A reviewing court will find reversible error based upon improper comments during
> closing arguments only if a defendant can identify remarks of the prosecutor that were

both improper and so prejudicial that real justice [was] denied or that the verdict of the jury may have resulted from the error.' (Internal quotation marks omitted.) [Citation.]" *People v. Camacho*, 2018 IL App (2d) 160350, ¶¶ 38-39.

¶ 13    We begin our plain-error review by determining whether the prosecutor's remark was reversible error. We do so with the recognition that, if an alleged error would not warrant reversal even if it had been properly preserved, it cannot warrant reversal under the plain-error rule. *People v. Euell*, 2012 IL App (2d) 101130, ¶ 22. Determining whether to reverse based on a preserved error normally requires application of the appropriate standard of review, but that is problematic here. As we observed in *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 58, the standard of review for challenges to closing arguments appears to be unsettled. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), held that whether improper closing arguments warrant a new trial is a question of law, subject to *de novo* review. However, *Wheeler* cited with approval, and relied on, *People v. Blue*, 189 Ill. 2d 99, 128 (2000), which applied the abuse-of-discretion standard to the same issue. We need not consider which standard of review applies. We conclude that, under either standard, the judgment of the trial court should be affirmed.

¶ 14    We first consider defendant's argument that it was improper for the State to comment on his invocation of the privilege against self-incrimination in the McPherson trial. The fifth amendment provides, in pertinent part, that "[n]o person *** be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In the seminal case of *Griffin v. California*, 380 U.S. 609 (1965), the Court concluded that it was improper to instruct a state-court jury that

> " '[a]s to any evidence or facts against him which the defendant can reasonably be
> expected to deny or explain because of facts within his knowledge, if he does not testify

or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.' " *Id.* at 610.

The instruction conformed to a provision of California's state constitution permitting courts and counsel to comment on a defendant's failure to explain or deny incriminating evidence regardless of whether the defendant testified. The *Griffin* Court characterized California's "comment rule" as "in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify." *Id.* at 613. The Court added that "[n]o formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance." *Id.*

¶ 15 In concluding that the practice was constitutionally impermissible, the *Griffin* Court explained that "comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' [citation] which the Fifth Amendment outlaws." *Id.* at 614. Significantly, the Court rejected the notion that "the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege." *Id.* The Court reasoned that "[w]hat the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Id.*

¶ 16 *Griffin* teaches that the injustice that occurs when the prosecution comments on the defendant's choice not to testify is that the comments invite the jury to assume what the

defendant would say if he or she did testify. The assumption, which was made explicit in the jury instruction in *Griffin*, is that, if the defendant had any defense to the charges, he would have testified. In *Griffin*, the prosecution's actions created an inference as to the *content* of the testimony the defendant would have given. That is not the case here. The prosecutor's comment on defendant's invocation of the fifth amendment in the McPherson trial was not designed to create any inference as to what defendant's testimony would have been in that trial. The contempt charge was based on defendant's *refusal to testify* after having been given immunity; the *content* of whatever testimony he might have given in the murder trial was immaterial to the contempt charge. Defendant cites no authority, and we are not aware of any, precluding comment on a refusal to testify when the comment does not invite an inference as to the content of the testimony that was withheld. The prosecutor was entitled to cast doubt on defendant's necessity defense by noting that he raised only the fifth amendment in the McPherson trial. Accordingly, we reject defendant's argument that the remark in question somehow impinged on his privilege against self-incrimination.

¶ 17   We next consider defendant's argument that the prosecutor's remark implied that defendant could not simultaneously fear self-incrimination and retribution for "snitching." According to defendant, "the prosecutor's argument was premised on an unreasonable inference from the evidence" because it "treated the defendant's invocation of his Fifth Amendment privilege and the defendant's fear of retaliation as mutually exclusive." We disagree with defendant's reading of the prosecutor's remark.

¶ 18   As discussed, during her rebuttal argument, the prosecutor accused defendant of "us[ing] the court system to try to get out of testifying," contending that the fifth amendment privilege against self-incrimination was his original "excuse" for not testifying and that "today his new

excuse is the necessity defense." This argument did not imply that it was somehow *impossible* for defendant to simultaneously fear both self-incrimination and retaliation. Rather, the prosecutor was simply asking the jury to infer that, if defendant truly feared retaliation, he would have found a way to alert the trial court or he would have alerted the prosecution earlier. Although the inference might not be an exceptionally strong one, it is at least reasonable and thus within the realm of permissible argument.

¶ 19    Defendant relies, in part, on *People v. Redd*, 135 Ill. 2d 252 (1990) (*Redd I*), and *People v. Redd*, 173 Ill. 2d 1 (1996) (*Redd II*). In *Redd I*, the court held that a witness's grand jury testimony that did not incriminate him was not inconsistent with his invocation of the fifth amendment at trial. See *Redd I*, 135 Ill. 2d at 326-27. Defendant cites *Redd I* for the proposition that his fear of self-incrimination was not inconsistent with his fear for his mother's safety and for his own. We do not disagree, but, as discussed, the prosecutor's remark here did not suggest such an inconsistency. In *Redd II*, the prosecution mischaracterized, as a confession, a statement by the defendant that circumstantially implicated him in a crime. Defendant argues that, likewise, the prosecution here mischaracterized defendant's invocation of the fifth amendment. Again, defendant's argument is based on a misreading of the prosecutor's remark.

¶ 20    More significantly, the *Redd II* court affirmed the defendant's conviction, reasoning in part that the prosecutor's remark was "but one phrase in the prosecution's lengthy closing argument" and that the jurors could weigh the implications of the defendant's statement. *Redd II*, 173 Ill. 2d at 30. Similarly, the remark that defendant challenges in this case was isolated; the thrust of the prosecutor's rebuttal argument was that threats made on a social media platform were unlikely to be carried out and that the threats were too old to support a necessity defense. Viewing the prosecutor's rebuttal argument in its entirety, we conclude that, even if the remark

in question had been improper, it would not have been so prejudicial that real justice was denied. Accordingly, the trial court did not commit reversible error, let alone plain error, in connection with its ruling prior to the prosecutor's closing argument.

¶ 21                                III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.  55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 23    Affirmed.