2021 IL App (2d) 200355-U
No. 2-20-0355
Order filed August 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-1915 |
| | ) | |
| KYAI GIBSON, | ) | Honorable |
| | ) | Patricia S. Fix, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Evidence supported the defendant's conviction of knowingly violating an order of protection, and prosecutor's remarks did not deprive him of a fair trial.  Sentence imposed was not disproportionate.

¶ 2    Following a jury trial, the defendant, Kyai Gibson, was found guilty of violating an order of protection obtained by his wife, Yashira Gonzalez.  720 ILCS 5/12-3.4(a)(2) (West 2016).  He was sentenced to three years' imprisonment.  He appeals, contending that the State did not prove beyond a reasonable doubt that he knowingly violated the order of protection, that certain prosecutorial statements during closing argument deprived him of a fair trial, and that his sentence was disproportionate under the Illinois constitution.  We affirm his conviction and sentence.

¶ 3                                     I. BACKGROUND

¶ 4      The following facts are drawn from the evidence at trial. Gibson and Gonzalez had known each other since childhood and were married. They had no children together. Gonzalez had two children, one of whom was S.G. Gibson "helped raise" S.G. for a time.

¶ 5      On August 10, 2017, Gonzalez obtained an emergency order of protection against Gibson. The emergency order displayed an expiration date of August 31, 2017. On that date, Gonzalez was granted a plenary order of protection that lasted two years, expiring on August 31, 2019. The expiration date was clearly visible on the order. The order required that Gibson stay at least 500 feet away from Gonzalez and her child S.G., and that he not contact them in any way, including by telephone, email, or text. A Lake County deputy sheriff testified that he served a copy of the plenary order on Gibson. Both the emergency order and the plenary order were admitted into evidence.

¶ 6      August 26, 2019, was S.G.'s first day of kindergarten. Gibson texted Gonzalez several times that morning, asking if he could walk S.G. into school. Gonzalez did not see the texts, which went into a "spam folder" on her new phone. As Gonzalez drove S.G. to the school, she could see texts arriving from Gibson's phone number. After finding out how to view the texts, she texted Gibson back, responding "no, no and no and no" to his request. When she pulled up at the school, she saw that Gibson's car was directly in front of hers. Gonzalez was upset and angered by Gibson's presence. She texted Gibson that he needed to leave and that she was calling the police. She called the police, and Gibson drove away. Gonzalez walked S.G. into the school.

¶ 7      Zion police officer Leticia Thornton was dispatched to the school in response to Gonzalez's call. Thornton pulled Gibson over about a block away from the school. When she told Gibson

that she was investigating whether he violated an order of protection, he said that he thought the order of protection had expired on August 10, 2019, and that he did not mean to violate it.

¶ 8 Thornton also testified that Gibson talked a lot during their interaction and was evasive in his answers. She had been dispatched regarding a possible violation of an order of protection, so she tried to find out whether Gibson had approached Gonzalez or spoken with her at the school. Gibson gave her different partial answers to that question, at one point indicating that he had spoken to Gonzalez, but later saying that the "dialogue" he had reported actually took place only in his thoughts.

¶ 9 Gibson was charged with two counts of violating an order of protection by contact with a protected person, count 1 with respect to Gonzalez and count 2 with respect to S.G. (Count 2 was dismissed at trial after the State rested, as the evidence did not show any contact between Gibson and S.G.) Prior to trial, the defense moved *in limine* to exclude any evidence that, at the time of the incident, Gibson was on probation from a previous offense, and one of the conditions of probation was that he have no contact with Gonzalez. The trial court granted the motion.

¶ 10 At trial, Gibson asserted the defense of mistake of fact—*i.e.*, that he did not know that the order of protection was still in effect. To support this theory, he introduced Thornton's testimony about his statement to her that he thought the order had expired on August 10, 2019; the emergency order of protection showing the August 10, 2017, issuance date; and Gonzalez's testimony on cross-examination that she was not sure whether the order of protection was still in effect on the day in question, as she had called the court some time earlier and had been told that the case was closed. Gibson himself did not testify. Over the State's objection, the trial court agreed to give jury instructions tendered by the defense regarding the defense of mistake of fact, finding that there was sufficient evidence in the record to support the giving of the instructions.

¶ 11    In closing arguments, the defense argued that Gibson's mistaken belief that the order of protection had expired was reasonable, as the order in fact expired only five days later, and Gonzalez herself thought it had probably expired.  The defense also appealed to the jury's sympathy, noting that Gibson's texts to Gonzalez were not threatening or violent in any way but merely sought permission for Gibson to participate in S.G.'s first day of kindergarten.

¶ 12    In rebuttal, the prosecutor made the following statements:

"Like it or not, there is a reason why jurors are told over and over that there are certain things that they have to leave out when they are trying to try a case.  Sympathy is one of them.  I know what it must come off like to some of you and it's understandable because we are human.  The defense attorney touched on the fact that the communication that the defendant had with [Gonzalez] was because he wanted to see his stepdaughter.

Now, we like to limit cases to certain things, not only to keep things efficient, but, frankly, because a lot of things are not relevant and that includes obviously why the order of protection was gotten in the first place.

[DEFENSE ATTORNEY]:  Objection.

THE COURT:  Sustained.

[STATE'S ATTORNEY]:  So just keep in mind, again, that sympathy really has no place in a case like this.  As cold as that sounds, that's what you're being asked to do and that's what your duties as jurors includes."

¶ 13    Turning to the issue of Gonzalez's uncertainty about when the order of protection expired, the prosecutor made two statements relevant here.  In the first, the prosecutor asked the jurors to take into consideration that Thornton "responded to a call for a violation for an order of protection" and said, "That's how the call came out because that's how the call came in."  The defense objected

and the trial court sustained the objection. The prosecutor continued, "She [Thornton] testified that she responded to a call for a violation of an order of protection and this call that she responded to was in response to the phone call that *** [Gonzalez] made to the police." The defense again objected and the trial court again sustained the objection. The prosecutor then turned to other arguments. As part of its instructions to the jury, the trial court reminded the jurors that the arguments of counsel were not evidence, and that their decision should be based solely on the evidence.

¶ 14    The jury found Gibson guilty. In his motion for a new trial, Gibson argued that there was insufficient evidence that he knowingly violated the order of protection, and that he was denied a fair trial by statements in the prosecutor's closing remarks wrongly suggesting that, in her call to the police, Gonzalez reported a violation of an order of protection. To support the latter argument, the defense played a recording of Gonzalez's 911 call (which had not been played or introduced at trial). The defense argued that the prosecutor mischaracterized the actual wording of the call, because Gonzalez was actually calling to report a violation of Gibson's terms of probation, not the order of protection. The defense argued that this mischaracterization unfairly undermined its argument that Gonzalez herself believed that the order of protection had expired. After considering the argument, the trial court denied the motion for a new trial.

¶ 15    At sentencing, Gibson made a statement in allocution, professing his lack of criminal intent and remorse. The State noted that, based on his criminal history, Gibson was eligible for an extended-term sentence of three to six years' imprisonment, and it asked that he be sentenced to three years. The defense asked that Gibson be sentenced to time served.

¶ 16    The trial court imposed a three-year sentence. Explaining its decision, the court stated that it had considered all of the statutory factors in mitigation and aggravation. It agreed with the

defense argument that there were "likely more factors in mitigation in this particular case than in aggravation," including that Gibson's conduct did not cause or threaten any serious physical harm, that there were "substantial grounds tending to excuse or justify" his conduct, and that Gibson was remorseful. However, Gibson also had a "rather extensive" criminal record, which included "significant" offenses such as armed robbery and aggravated robbery, as well as repeated incidents of domestic violence toward Gonzalez and also another woman. That history showed not only his delinquency but also that his criminal conduct could reoccur. Gibson had received four sentences of imprisonment and also several sentences of probation. In fact, he was on probation when the offense of conviction occurred. Agreeing with the defense that the court was required to sentence Gibson based on the current offense rather than his history, the court noted that it also sentenced "the person," and in doing so it considered his criminal history as well. Gibson had already received an eight-year sentence for a prior offense but that did not deter him from continuing to offend, and thus the court really "should be sentencing [Gibson] to the maximum six years" under the extended term. Nevertheless, in light of the nonthreatening nature of the current offense and because the State had only asked for three years, it would sentence him to three years' imprisonment. Gibson filed a motion to reconsider the sentence, which the trial court denied.

¶ 17                                  II. ANALYSIS

¶ 18    On appeal, Gibson argues that the State failed to disprove his defense of mistake of fact beyond a reasonable doubt, that the prosecutor's remarks in closing deprived him of a fair trial, and that his sentence was unconstitutionally disproportionate to the harm caused by his conduct. We take each argument in turn.

¶ 19                      A.  Sufficiency of the Evidence as to Knowledge

¶ 20    Gibson first argues that the State failed to prove beyond a reasonable doubt that he knowingly violated the order of protection, as the evidence showed that he was mistaken about the expiration date of that order. In a criminal trial, the State bears the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. *People v. Weinstein*, 35 Ill. 2d 467, 470 (1966). In evaluating the sufficiency of the evidence, this court does not retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Instead, the relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This deferential standard applies because the weight to be given to the witnesses' testimony, the determination of their credibility, and the reasonable inferences to be drawn from the evidence are all matters for the trier of fact. *People v. Smith*, 185 Ill. 2d 532, 542 (1999); *Collins*, 106 Ill. 2d at 261-62. Likewise, the resolution of any conflicts or inconsistencies in the evidence was also within the province of the factfinder. *Collins*, 106 Ill. 2d at 261-62. We will set aside a criminal conviction only "where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Smith*, 185 Ill. 2d at 542.

¶ 21    Applying these principles to this case, we must resolve whether, viewing the evidence presented at trial in the light most favorable to the State, a rational juror could find that Gibson knowingly violated the order of protection. The evidence showed that Gibson was served with the plenary order of protection and that the order's expiration date—August 31, 2019—was clearly displayed on the order. Based on this evidence alone, rational jurors could conclude that Gibson knew, on August 26, 2019, that the order was still in effect. Thus, there was sufficient evidence of Gibson's knowledge to support his conviction.

¶ 22      Gibson argues that the evidence also showed that he mistakenly thought that the order had expired over two weeks earlier, on August 10, 2019. In particular, he points to his statements to Thornton, the fact that the emergency order had an August 10 date on it, and Gonzalez's own belief that the order had probably expired. However, none of this evidence disproves Gibson's knowledge of the correct expiration date. As to his statements to Thornton, the jury was free to disbelieve that Gibson genuinely thought the order had expired. See *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL 113482, ¶ 62. Although the emergency order showed an issuance date of August 10, 2017, it also clearly displayed an expiration date of August 31, 2017. Indeed, both the emergency order and the plenary order showed expiration dates on August 31, not August 10. Thus, Gibson's purported belief that the plenary order had expired on August 10 was not reasonable. As to Gonzalez's doubt about whether the plenary order was still in effect at the time of the violation, she testified that her doubt was based on being given the wrong information when she called to inquire. There was no evidence that Gibson had made any similar inquiry and gotten similar misinformation, or that Gonzalez shared with Gibson the misinformation she received. Therefore, Gonzalez's doubt does not establish that Gibson's purported mistaken belief was reasonable.

¶ 23      Finally, this argument lacks merit because Gibson does not assert that he never knew the correct expiration date of the order, but rather that he forgot or misremembered that date. "Knowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful." *People v. Witherspoon*, 2019 IL 123092, ¶ 33 (quoting *People v. Sevilla*, 132 Ill. 2d 113, 125 (1989)). Here, the evidence shows that Gibson knew, on the date when he was served with the plenary order of protection, when that order expired. Thus, he was

aware of facts that made his conduct on August 26, 2019, unlawful. A later lapse of memory does not equate to a "mistake of fact." *People v. Najar*, 2018 IL App (2d) 160919, ¶ 20.

¶ 24                                    B. Prosecutorial Misconduct

¶ 25    Gibson next argues that he was denied a fair trial by remarks made by the prosecutor in closing argument. On appeal, he complains of three such remarks: (1) the statement that one of the things the jurors should not consider was "why the order of protection was gotten in the first place"; (2) the statement that Thornton was responding to a call about a possible violation of an order of protection and that "That's how the call came out because that's how the call came in"; and (3) the statement that Thornton testified that "she responded to a call for a violation of an order of protection and this call that she responded to was in response to" Gonzalez's call to the police.

¶ 26    "[A] criminal defendant, regardless of guilt or innocence, is entitled to a fair, orderly, and impartial trial." *People v. Wheeler*, 226 Ill. 22 92, 121-22 (2007). However, prosecutors are accorded wide latitude in making closing arguments. *Id*. at 123; *People v. Perry*, 224 Ill. 2d 312, 347 (2007). They "may comment during closing argument on the evidence and on any fair and reasonable inference the evidence may yield." *Id*.    When reviewing a prosecutor's closing argument, "we look at the argument as a whole, rather than focusing only on select phrases or remarks." *People v. Ali*, 2019 IL App (2d) 161016, ¶ 12. "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them. [Citation.] Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction." *Wheeler*, 226 Ill. 2d at 123. "Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Id*. at 121.

¶ 27　We begin by noting that, although defense counsel objected during trial to the first challenged remark (about the reason why the order of protection was issued), counsel did not preserve the objection by raising it in the posttrial motion. Instead, only the second and third remarks (about whether Gonzalez's call reported a violation of an order of protection) were raised in the posttrial motion. "To preserve claimed improper statements during closing argument for review, a defendant must object to the offending statements both at trial and in a written posttrial motion." *Id*. at 122. Thus, Gibson forfeited his ability to raise on appeal the propriety of the first remark. Further, although Gibson could have argued that the propriety of the first remark should be reviewed under the plain error doctrine (see *Ali*, 2019 IL App (2d) 161016, ¶ 12), he failed to raise any plain error argument in his briefs. His argument as to the first remark is therefore forfeited.

¶ 28　We note that, even if the argument were not forfeited, it lacks merit. The prosecutor's statement—that it was irrelevant "why the order of protection was gotten in the first place" and thus the jurors should not consider that—was a correct statement. Further, although we do not condone the prosecutor's action in drawing the jurors' attention to the matter through its comment, it was an isolated comment. Moreover, the trial court sustained the defense objection and later instructed the jury that the arguments of counsel were not evidence, thereby diminishing any prejudicial impact it may have had. See *People v. Ceja*, 204 Ill. 2d 332, 357 (2003). For all of these reasons, we find that the first prosecutorial remark was not reversible error.

¶ 29　As for the second and third remarks, they likewise did not deprive Gibson of a fair trial. Gibson raises several arguments regarding these remarks, but none have merit.

¶ 30　Gibson argues that the remarks violated the trial court's grant of his motion *in limine*, but this is not so. The motion *in limine* barred the State from mentioning the fact that Gibson was on

probation when the incident occurred. The challenged remarks do not in any way mention Gibson's probationary status, or even suggest it. Thus, they do not violate the motion *in limine*.

¶ 31    Gibson also argues that the prosecutor should not have commented on Gonzalez's call to the police because the recording of that 911 call was not in evidence, citing the principle that prosecutors should not refer to evidence that has been excluded or is inadmissible. However, the 911 recording had not been ruled inadmissible or excluded. Rather, neither party sought to admit it. Moreover, the existence of the call was established by both Gonzalez's and Thornton's testimony. Thus, the authority cited by Gibson is inapposite.

¶ 32    Gibson argues that these remarks improperly implied that Gonzalez had called the police because she believed Gibson was violating the order of protection, but this was false. There are several problems with this argument. First, the prosecutor did nothing other than summarize the testimony that had been given. Thornton testified (without objection) that she "had been called out to a violation of an order of protection," that she knew the order of protection was still active on that date, and that she conversed with Gibson about "an order of protection that [she was] investigating." Gonzalez testified that she called the police because of Gibson's presence at the school. From this testimony, a reasonable juror could conclude that Gonzalez called the police to report that Gibson was violating an order of protection. The prosecutor's remarks merely suggested that same inference.

¶ 33    Further, as to Gibson's argument that this inference was false, because Gonzalez was actually reporting a violation of Gibson's probation, not a violation of the protection order, Gibson fails to support this argument. As we have noted, the 911 recording was not admitted at trial. And, although defense counsel played the 911 recording for the trial court at the hearing on the posttrial motion, no copy or transcript of that call appears in the record on appeal. Thus, we have no basis

on which to conclude that the inference created by the prosecutor's comments—that Gonzalez called the police to report a violation of the order of protection—was false or improper.

¶ 34   In any appeal, it is the responsibility of the appellant to supply a complete record sufficient to permit review of the issues it wishes to raise on appeal. *People v. Carter*, 2015 IL 117709, ¶ 19. In the absence of such a record, we must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1008 (2007) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Carter*, 2015 IL 117709, ¶ 19. Accordingly, we must presume that the trial court's decision on this issue—that the prosecutor's comments were not so unsupported or contrary to the actual content of the 911 call that they denied Gibson a fair trial—was supported by the record.

¶ 35   Finally, even assuming for the sake of argument that the prosecutor had misstated the evidence or created a false inference as argued by Gibson, he has failed to show that the misstatement was substantial or that it constituted a material factor in his conviction. *Wheeler*, 226 Ill. 2d at 123. At most, it undermined a point that Gibson wished to make, namely, that his belief that the order of protection had expired was reasonable because Gonzalez had the same belief. However, as we noted above, *Gonzalez's* belief was not particularly probative on the issue of *Gibson's* purported mistake, because while Gonzalez's belief rested on the incorrect information she had received, Gibson had not received that same information. Thus, there is no reasonable probability that, but for the prosecutor's brief remarks about the nature of Gonzalez's call, the jury would have acquitted Gibson. *Id.* Even if the prosecutor's remarks were improper or incorrect (which we have not found), they would not amount to reversible error.

¶ 36                                  C. Sentence

¶ 37    Gibson's last argument on appeal is that the trial court violated his right under the Illinois

constitution to punishment proportionate to the offense.  He asserts that his sentence of three years'

imprisonment is not proportionate to his crime, in which no one was harmed or threatened with

harm, and he asks that we reduce his sentence.  Before addressing the merits of this argument, we

consider the appropriate standard of review to be applied.

¶ 38    "It is well settled that the trial court has broad discretionary powers in imposing a sentence,

and the trial court's sentencing decision is entitled to great deference." *People v. Stacey*, 193 Ill.

2d 203, 209 (2000).  However, "[a]lthough the trial court is vested with wide discretion in

sentencing, such discretion is not without limitation." *Id.*  Illinois Supreme Court Rule 615(b)(4)

grants the reviewing courts the power to reduce or modify the sentence imposed by the trial court.

Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967).  Nevertheless, that power should be exercised sparingly.

*People v. Etherton*, 2017 IL App (5th) 140427, ¶ 27 (citing *People v. Alexander*, 239 Ill. 2d 205,

212 (2010)).  Our supreme court has repeatedly affirmed that, "absent an abuse of discretion by

the trial court, the sentence may not be altered on review." *Stacey*, 193 Ill. 2d at 209-10.  A

sentence that is within the statutory range for the offense can be an abuse of discretion if it is

"greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the

nature of the offense." *Id.* at 210.

¶ 39    Gibson argues that the abuse of discretion standard should not apply when the issue is

whether a sentence violates the Illinois constitution.  The Illinois constitution mandates that "[a]ll

penalties shall be determined both according to the seriousness of the offense and with the

objective of restoring the offender to useful citizenship." Ill. Const., art. 1, § 11.  Gibson contends

that, as his argument involves the interpretation of the constitution and its application to

"uncontroverted facts," we should review the issue *de novo*. See *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21. We reject this argument.

¶ 40    Gibson's argument misconceives the nature of sentencing. In imposing a sentence, the trial court must take into account not only the statutory factors and other legal standards that apply, but also considerations such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Stacey*, 193 Ill. 2d at 209. The constitution emphasizes two factors as paramount: the seriousness of the offense and the desirability of rehabilitating the defendant as far as possible. Ill. Const., art. 1, § 11. These constitutional principles underlie the sentencing statutes. See *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 18 (one purpose of the Criminal Code is "to implement this constitutional provision"). However, none of these factors—whether they are imposed by statute or by the constitution—are purely legal in nature or rest on evidence that is susceptible to only one possible view. Thus, the weighing of these factors requires the trial court to exercise its discretion. That is why our review is deferential and considers only whether that discretion was abused. See *id*. ¶ 15 (due to its greater familiarity with the case and its superior ability to observe the defendant and the witnesses, "the trial court is in the best position to consider" these factors).

¶ 41    That courts are bound by the principles espoused in the Illinois constitution as well as by the statutory sentencing factors does not change this rationale or our deferential standard of review. Indeed, Gibson acknowledges that the courts that have considered whether *de novo* review should apply to constitutional claims like his have uniformly rejected the argument. *Id*. ¶ 21 (noting that "[o]ur supreme court has extensively considered the propriety of using the abuse of discretion standard in reviewing sentences and has repeatedly upheld the use" of that standard, and appellate courts "are bound to follow the decisions of our supreme court and have no authority to overrule

them"); *People v. Colon*, 2018 IL App (1st) 160120, ¶ 72 (same). We find these courts' reasoning sound and therefore review Gibson's sentence for abuse of discretion.

¶ 42    Turning to the merits of the argument, we find that the trial court did not abuse its discretion in imposing a three-year sentence on Gibson. Gibson concedes that the sentence was within the statutory range (both under the extended-term sentencing for which Gibson was eligible and under the ordinary sentencing for class 4 felonies) and that the trial court appropriately considered the statutory sentencing factors. He argues only that, under the constitutional factors—the seriousness of the offense and his potential for rehabilitation—his three-year sentence was too long.

¶ 43    Gibson asserts that his conduct merely consisted of sending text messages seeking to walk his daughter into school on her first day, and did not harm or threaten harm to anyone. However, that conduct did not occur in a vacuum. Gibson sent those texts despite the existence of a court order prohibiting him from contacting Gonzalez, an order that had been issued because of Gibson's past violence toward Gonzalez. Gibson also showed up at S.G.'s school without waiting for any response to his texts. In seeking to resume his presence in the lives of S.G. and Gonzalez, the texts reawakened Gonzalez's fears of violence. Those fears were evident in Gonzalez's vehement "no, no, and no and no" to Gibson's texted request and her immediate call to the police. It is clear that, to Gonzalez, Gibson's texts and appearance at the school did constitute a threat.

¶ 44    Gonzalez's perception of a threat from Gibson's conduct was well-founded, as Gibson's criminal history makes clear. In 2016, Gibson broke into a locked room and grabbed Gonzalez, injuring her son who attempted to come between them. In April 2018, Gibson violated an order of protection by assaulting Gonzalez, punching her in the face four times and attempting to strangle her. In July 2018, Gibson was convicted of violating an order of protection after hiding in Gonzalez's garage. He was on probation for those offenses when he again contacted Gonzalez in

this case on August 26, 2019. Gibson had committed other violent crimes as well. In 2001, he committed armed robbery. That same year, a woman obtained an emergency order of protection against him for throwing her against a wall and onto a couch, and threatening to kill her. A year after being paroled from his sentence for the armed robbery, he again robbed someone through a threat to use a gun and was convicted of aggravated battery.

¶ 45    When placed in this context, Gibson's violation of a protection order by texting Gonzalez and showing up at her child's school was indeed a serious offense. Moreover, as the trial court noted, Gibson persisted in his violence toward Gonzalez and disregarded protection orders, indicating that the sentences of probation he had received were insufficient to deter him from reoffending. The trial court thus properly considered both the seriousness of the offense and the objective of rehabilitation in sentencing Gibson.

¶ 46    Gibson cites *People v. Busse*, 2016 IL App (1st) 142941, and *People v. Allen*, 2017 IL App (1st) 151540, as examples of cases in which an appellate court found that the defendant's sentence violated the constitutional mandate that sentences be proportionate to the seriousness of the offense and reduced the sentences imposed. However, those cases are readily distinguishable. In both cases, the defendants had no record of violent offenses and had committed only petty theft, yet they were given sentences of over 10 years. *Busse*, 2016 IL App (1st) 142941, ¶ 29-31 (12-year sentence was "grossly disproportionate" and violated Illinois constitution where defendant's offense was stealing $44 in quarters from a vending machine and his lengthy criminal history involved no violence against a person); *Allen*, 2017 IL App (1st) 151540, ¶ 15 (sentence of 10½ years was "manifestly disproportionate" to the nature of the defendant's offense, breaking into a truck and taking two packs of cigarettes and a cap, where the defendant's criminal history was "nonviolent, nonserious," and had posed no risk of harm to anyone). Here, by contrast, Gibson

has a lengthy record of violent offenses. His offense of conviction was based on conduct that, although not yet violent, posed a risk of violence that was averted through Gonzalez's immediate call to the police. A violation of an order of protection is an offense against the person, not minor theft of property as in *Busse* and *Allen*. Further, despite his violent past and the inherent risk of further violence in his offense of conviction, Gibson was sentenced to a term of only three years, far less than the sentences given to Busse and Allen. (Indeed, Busse and Allen both received six-year sentences even *after* modification by the appellate court.) *Busse* and *Allen* thus are inapposite here.

¶ 47 The purpose of the statutes governing protective orders is "to protect the safety of victims of domestic violence *** and stalking and the safety of their family and household members." 725 ILCS 5/112A-1.5 (West 2018). The sentence Gibson received was not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. The trial court did not abuse its discretion in sentencing Gibson.

¶ 48 III. CONCLUSION

¶ 49 For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 50 Affirmed.