2021 IL App (1st) 192017-U

No. 1-19-2017

Order filed September 2, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| vs. | ) ) | No. 18 CR 9385 |
| WILLIE WARE, | ) ) | Honorable Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justices Gordon and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's six-year sentence is affirmed where it does not violate the proportionate penalties clause of the Illinois Constitution.

¶ 2    Following a bench trial, defendant, Willie Ware, was convicted of one count of delivery of a controlled substance (fentanyl), with a weight of one gram or more but less than 15 grams, and was sentenced to a term of six years' imprisonment in the Illinois Department of Corrections (IDOC). On appeal, Ware contends his six-year Class X sentence violates the proportionate penalties clause of the Illinois Constitution as applied to him, where it shocks the moral sense of

the community. Specifically, Ware argues he should have received probation, where (1) his behavior was the product of his heroin addiction, (2) his previous convictions were the product of racist drug enforcement policies that disproportionally target African Americans, (3) his predicate convictions were distant in time, (4) he is not the type of offender the Class X statute was designed to punish, and (5) his sentence significantly increases his exposure to COVID-19.

¶ 3     For the following reasons, we affirm the trial court's six-year sentence and find it does not violate the proportionate penalties clause.[1]

¶ 4                                    I. JURISDICTION

¶ 5      The trial court sentenced Ware on August 22, 2019, and on August 23, 2019, Ware filed a timely notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, §6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 6                                    II. BACKGROUND

¶ 7      On May 27, 2018, at 10:05 a.m., Chicago police officer Marshall Mason was working undercover in the area near 909 N. Lamon Avenue in Chicago, Cook County, Illinois. As Mason walked to the corner of Iowa Street and Lamon Avenue, he approached Ware and asked him "was the blows outside." Mason had previously heard the term "blows" as an officer assigned to the narcotics team and knew the term to mean heroin. In response, Ware—dressed in blue jean shorts, bare-chested with a white shirt over his shoulder and a blue baseball cap—asked Mason how many he wanted. When Mason replied he wanted four, Ware directed Mason to walk with him.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8        The two men walked northbound, at which point Mason observed Ware remove a plastic bag from his right front pants pocket. Ware opened the bag with his teeth, removed four smaller tinfoil-wrapped and taped bags, and handed them to Mason. In exchange, Mason tendered Ware $40 in 1505 funds. After receiving the suspect narcotics, Mason continued walking northbound towards his unmarked police vehicle, as Ware headed southbound. Mason notified other officers that a narcotics transaction occurred and gave them Ware's description.

¶ 9        Chicago police officer Vincent Ciancio was working undercover as an enforcement officer with fellow police officers Riccio and Oliver[2] on May 27, 2018. At approximately 10:20 a.m., officer Ciancio received a radio transmission from officer Mason, informing him of Ware's last known location and physical description. Officer Oliver then drove officers Riccio and Ciancio to 845 N. Lamon Avenue, where they observed Ware—wearing a backwards blue baseball cap, shirtless, with a shirt around his shoulders, and blue jean shorts. Once the enforcement officers had stopped Ware, Mason circled the block in his unmarked police vehicle, drove by Ware, and confirmed via radio that the officers stopped the correct individual.

¶ 10       Officer Riccio, who was seated in the front passenger seat, then asked Ware to come to their unmarked police vehicle. After Ware approached the vehicle, Ciancio asked for his identification. Ware provided his Illinois State Identification Card, which the officers ran through Law Enforcement Agencies Data Systems (LEADS). The officers then returned Ware's identification card, left the scene, and returned to Homan Square Police Department where they submitted an investigatory stop report.[3] As there was an ongoing undercover police investigation,

_____

[2]Neither officer Riccio's nor officer Oliver's first names were disclosed at trial.
[3]Officer Ciancio testified that an investigatory stop report documents the reason for the stop, as well as the suspect's information.

the officers did not search Ware and therefore did not recover the $40 in 1505 funds or the tinfoil packets Mason reported Ware had in his front pants pocket.

¶ 11    Upon his return to the police station, Mason inventoried the tinfoil packets and sealed them under inventory number 14180996. The packets were subsequently sent to be tested for the presence of narcotics. Mason viewed a photo array and circled Ware's picture, identifying Ware as the man who sold him the tinfoil packets.

¶ 12    At trial, the State introduced into evidence and published video of the narcotics purchase and a partial video of the investigatory stop. The parties stipulated that the powdered substance contained in inventory number 14180996 was examined by Illinois State Police chemist Joseph Gillono and identified as 1.1 grams of fentanyl. Defense counsel then moved for a directed finding, which the trial court denied. Ware declined to testify, and counsel rested without presenting any witnesses. The trial court—finding the testimony of officer Mason credible, clear, and concise and that the videos corroborated the officers' testimonies—found Ware guilty of one count of delivery of a controlled substance.

¶ 13    On August 22, 2019, the court heard Ware's motion for a new trial, wherein he argued that the State failed to prove beyond a reasonable doubt that (1) he delivered a controlled substance, (2) the weight of the controlled substance exceeded one gram, and (3) he was the offender involved in the drug transaction. The court denied Ware's motion for a new trial, finding the State proved its case beyond a reasonable doubt. At sentencing, the court considered Ware's background, including his four prior felonies: a 2013 Class Two conviction for unlawful use of a weapon (UUWF), two 2007 Class One convictions for possession of a controlled substance (PCS), and a 2005 Class Two conviction for PCS with intent to deliver. The court additionally considered Ware's academic background and his completion of his GED, his history of substance abuse, his

mental health history, and his familial support system. Both Ware's mother and father testified in mitigation, and Ware spoke in allocution.

¶ 14 In sentencing Ware, the court stated that, based upon Ware's background and the nature and number of convictions he had, it was "boxed in." The court iterated that it did not have discretion to issue a sentence below a term of six years as Ware was subject to Class X sentencing. However, the court also stated that it was considering not only Ware's background, but the weight of the drugs and the basis behind Ware's motivation for selling drugs (his addiction). Ultimately, the court sentenced Ware to the minimum sentence of six years in the IDOC.

¶ 15                                    III. ANALYSIS

¶ 16 On appeal, Ware argues his six-year Class X sentence violates the proportionate penalties clause of the Illinois Constitution, as applied to him. Ware contends his sentence shocks the moral sense of the community, as (1) his behavior was the product of his heroin addiction, (2) his previous convictions were the product of racist drug enforcement policies that disproportionally target African Americans, (3) his predicate convictions were distant in time, (4) he is not the type of offender the Class X statute was designed to punish, and (5) his sentence significantly increases his exposure to COVID-19. The State argues Ware has forfeited his claim, where he failed to object at his sentencing hearing and failed to raise the claim in a written motion to reconsider sentence. The State further contends that, as the facts and circumstances of Ware's claims have not been sufficiently developed at an evidentiary hearing before the trial court, they are premature. On the merits, the State maintains that Ware's six-year sentence does not violate the proportionate penalties clause where Ware was sentenced to the minimum sentence available by law and his sentence was the direct result of his recidivism.

¶ 17    Generally, to preserve an issue of sentencing error, a defendant must both object contemporaneously and raise the issue in a post-sentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see also *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, the record demonstrates, and Ware concedes, that he made no objection at any time during the sentencing hearing. Nor did Ware file a written post-sentencing motion raising the issue. However, Ware argues his claim is not forfeited since as-applied constitutional challenges may be raised for the first time on appeal when the record contains all facts necessary to review the claim. It is well settled that "[f]orfeiture is a limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 47. Moreover, "a defendant may overcome forfeiture where the record contains all facts necessary to review his as-applied challenge, raised for the first time on appeal." *People v. Nieto*, 2020 IL App (1st) 121604-B, ¶ 33. Thus, as we find that the record in this case contains all facts necessary to review Ware's as-applied constitutional challenge, we therefore address the merits of Ware's claim below.

¶ 18    All sentences shall reflect both the seriousness of the offense and be determined with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11; *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. A sentence may be deemed "unconstitutionally disproportionate if *** the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). Yet, the proportionate penalties clause does not require the possibility of rehabilitation be given greater weight and consideration than the seriousness of the offense in determining a proper penalty. *People v. Perez*, 2018 IL App (1st) 153629, ¶ 41. A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st)

120349, ¶ 46. Additionally, there is a strong presumption that statutes are constitutional, and we will uphold them whenever reasonably possible. *People v. Patterson*, 2014 IL 115102, ¶ 90. Ware has the burden of rebutting this presumption; we will review his constitutional challenge *de novo*. *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 29. *De novo* means we analyze the claims the same as a trial court would. *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18.

¶ 19    Delivery of a controlled substance is a Class 1 felony, punishable by a term of 4 to 15 years in prison. 720 ILCS 570/401(c)(1.5) (West 2018); 730 ILCS 5/5-4.5-30 (West 2018). When a defendant over the age of 21 years old is convicted of either a Class 1 or Class 2 felony after having been twice convicted of a Class 2 or greater offense containing the same elements as the current offense, they must be sentenced as a Class X offender. 730 ILCS 5/5-4.5-95(b) (West 2018). The Class X sentencing statute "takes into consideration criminal history and reflects the legislature's judgment that repeat offenders deserve longer sentences." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 16. Due to his criminal background, Ware was subject to Class X sentencing, with an applicable sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2018). While the trial court's discretion was inhibited by the Class X sentencing mandate, the trial court nonetheless exercised its discretion when it tailored Ware's sentence to the lower end of the Class X range, after considering both the seriousness of the offense and Ware's nonviolent background. It cannot be said that Ware's six-year sentence for delivering Fentanyl "shocks the conscience" where it was his fifth felony in 13 years. Furthermore, as Ware's six-year sentence falls within the aforementioned statutory guidelines, it is therefore presumed to be proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 20    Ware does not dispute that his sentence fell within the permissible sentencing range and is presumed proper. Rather, he argues that he is not the type of offender the Class X statute was

- 7 -

designed to punish. He posits that Class X sentencing was created only to protect the public from murderers and rapists, and—as he has caused no harm to another human being in any of his cases— the mandatory sentencing provision was not meant to target him. The State counters that this court called upon the legislature, in *People v. Busse*, 2016 IL App (1st) 142941, and *Allen*, 2017 IL App (1st) 151540, to change the Class X sentencing laws to exclude non-violent offenses. The State points out that, in the four years since *Allen*, the legislature has not amended the recidivist sentencing laws for habitual criminals to exclude non-violent offenders. In his reply brief, Ware responds by highlighting the February 22, 2021 amendment to the habitual criminal statute. 725 ILCS 5/5-4.5-95(b) (West 2021); Public Act 101-652 (eff. July 1, 2021). The amended provision provides that a defendant's sentence is only enhanced when said defendant is convicted of a "Class 1 or Class 2 *forcible* felony" and has two prior convictions for a "Class 2 or greater *forcible* felony." (Emphasis added.) 725 ILCS 5/5-4.5-95(b) (West 2021).

¶ 21　　　While Ware does not specifically argue that this new sentencing amendment should apply to his conviction, it is incumbent upon this court to highlight that amendments to a statute will generally be construed to apply prospectively, and not retroactively. *People v. Smith*, 2014 IL App (1st) 103436, ¶ 95. This presumption, however, may be rebutted by either express statutory language or by necessary implication. *People v. Digirolamo*, 179 Ill. 2d 24, 50 (1997). The act itself " 'must clearly indicate that the legislature intended a retroactive application.' " *Doe Three v. Department of Public Health*, 2017 IL App (1st) 162548, ¶ 37 (quoting *Harraz v. Snyder*, 283 Ill. App. 3d 254, 259 (1996)). The long-standing rule is that the "prospective application of statutes is to be preferred to retroactive application because of the fundamental principle of jurisprudence that the retroactive application of new laws is usually unfair and the general consensus that notice or warning of the rule should be given in advance of the action whose effects are to be judged." *Id.*

¶ 22        Nothing in Public Act 101-652 indicates that it was intended to apply retroactively. On the contrary, it provides, in relevant part, "This Act takes effect July 1, 2021 ***." Pub. Act 101-652, § 99-999. In the absence of a clear expression of intent to apply the revised Class X sentencing structure retroactively, we presume the legislature intended Public Act 101-652 to have only a prospective effect.

¶ 23        Ware nevertheless argues that the statutory amendment is "objective evidence" that the moral sense of the Illinois community has rejected the notion that mandatory enhanced Class X penalties should be applied to nonviolent offenders like Ware. However, the legislature had the authority and ability to specifically designate that the amendment to the habitual criminal statute should apply retroactively. It declined to do so, supporting the argument that the legislature's decision to sentence repeat offenders more harshly is not dependent solely upon the magnitude of the offense but rather recidivists' failure to change their behavior. See *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981). We will "not depart from the statute's plain language by reading in exceptions, limitations, or conditions in conflict with the legislature's intent." (Internal quotation marks omitted). *People v. Haberkorn*, 2018 IL 160599, ¶ 26.

¶ 24        Next, Ware—focusing on the decade in between this occurrence and his previous most recent predicate felony conviction and his severe opioid addiction—argues the trial court abused its discretion in sentencing him, as the sentence was disproportionate in length to the nature of the crime and to his background. Moreover, Ware claims his convictions are a result of "the unfair administration of Illinois drug and sentencing laws that have disproportionately incarcerated Black Americans for years." Essentially, Ware maintains that the trial court should have disregarded the statutory mandates imposed by the legislature and declined to impose the mandatory minimum sentence.

¶ 25    A "trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (citing *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). A sentence "within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Kuplin*, 2021 IL App (2d) 180696, ¶ 76. The trial judge, having observed Ware and the proceedings, is in a better position to weigh factors such as Ware's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Alexander*, 239 Ill. 2d at 212-13. The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor (*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Where, as here, a defendant argues that the court failed to properly consider certain factors, the defendant "must make an affirmative showing that the sentencing court did not consider relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. Ware has made no such showing. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Alexander*, 239 Ill. 2d at 213 (quoting *Stacey*, 193 Ill. 2d at 209). Pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), a reviewing court may reduce the sentence a trial court imposes on a defendant. "That power, however, should be exercised 'cautiously and sparingly.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)).

¶ 26    In the instant case, Ware's six-year sentence is not "manifestly disproportionate to the nature of the offense" and cannot be considered an abuse of discretion. We must not substitute our judgment for that of the trial court or reweigh the factors; the trial court has discretion in sentencing, although that discretion is not "totally unbridled." *People v. Brown*, 2015 IL App (1st)

130048, ¶ 42. Here, the presentence investigation outlined Ware's criminal history, including the dates of his previous convictions. Additionally, the State reiterated that Ware had not been convicted of a felony since 2013, and he appeared to come from a good, stable home. Defense counsel argued in mitigation that Ware had an extensive mental health and addiction history, and he asked the trial court to consider mental health court, despite Ware's ineligibility. We presume that the court considered this mitigating evidence. *Jackson*, 2014 IL App (1st) 123258, ¶ 53.

¶ 27 In sentencing Ware, the trial court noted that Ware's "background has kind of boxed you in and boxed me in," and therefore, the court was constrained to consider a sentence only within the Class X statutory range of 6 to 30 years. The court then specifically indicated that it was considering Ware's background, the weight of the drugs, and the basis of Ware's motivation for selling drugs (his addiction). These considerations led the court to sentence Ware to the minimum sentence of six years. Despite Ware's attestations that the trial court felt unduly constrained by the mandatory sentencing statute, the court, in sentencing Ware, strongly urged him to consider the gravity of his criminal background, the effect his addiction had in landing him in his current situation, and the fact that he could have been sentenced for as many as 30 years, given his status as a Class X offender.

¶ 28 Given this record, we find Ware's request that we determine the trial court largely lacked discretion—and abused any discretion it may have had—is merely a request for this court to reweigh the evidence and substitute its judgment for that of the trial court. This we will not do. *Alexander*, 239 Ill. 2d at 213 (where the sentencing court adequately considered the appropriate factors, "the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed those factors differently"). Ware has failed to meet his burden in

affirmatively showing that the sentencing court did not consider the relevant factors during sentencing. See *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 29 Finally, Ware argues that his sentence now poses a significant risk that he will suffer a serious illness or death, due to the current state of the COVID-19 pandemic. Despite Ware's contention that his sentence is disproportionate and should be lowered because he faces a high risk of contracting COVID-19 in prison, this Court can find no case law to support Ware's argument, nor does he provide any, that a sentencing court must take into consideration the impact of a worldwide pandemic and correspondingly reduce a defendant's sentence.

¶ 30 For these reasons, we find Ware's sentence does not violate the proportionate penalties clause of the Illinois Constitution. Furthermore, his sentence did not constitute an abuse of discretion, where the trial court followed the law when it imposed a sentence within the applicable range and gave appropriate consideration to all factors in mitigation, including (a) Ware's potential for rehabilitation, (b) his nonviolent criminal history which overall posed little risk of harm to other individuals, (c) his drug abuse habit, and (d) the fact that Ware's previous prison sentences have neither deterred him from committing further criminal acts nor rehabilitated him.

¶ 31                                    III. CONCLUSION

¶ 32 Based on the foregoing, we affirm Ware's six-year sentence for delivery of a controlled substance.

¶ 33 Affirmed.